**2015-1310**

# United States Court of Appeals
# for the Federal Circuit

STATE OF VERMONT,

*Plaintiff-Appellee*,

v.

MPHJ TECHNOLOGY INVESTMENTS, LLC,

*Defendant-Appellant*.

---

*Appeal from the United States District Court for the District of Vermont in No. 2:14-cv-00192-wks, Judge William K. Sessions III.*

---

## DEFENDANT-APPELLANT MPHJ TECHNOLOGY INVESTMENTS, LLC'S APPEAL BRIEF

W. Bryan Farney
Steven R. Daniels
David Paul Swenson
FARNEY DANIELS PC
800 South Austin Avenue, Suite 200
Georgetown, Texas 78626
Telephone: (512) 582-2828
Facsimile: (512) 582-2829
BFarney@farneydaniels.com
SDaniels@farneydaniels.com
DSwenson@farneydaniels.com

*Counsel for Defendant-Appellant*

April 6, 2015

## <u>CERTIFICATE OF INTEREST</u>

1.      The full name of every party represented by me is:

MPHJ Technology Investments, LLC.

2.      There are no other real parties in interest represented by me.

3.      MPHJ Technology Investments, LLC certifies that it has no corporate parent and there are no publicly held corporations that own 10% or more of its stock.

4.      The names of all the firms or lawyers that appeared for the party now represented by me in the trial court or are expected to appear in this court are as follows:

Bryan Farney, Steven R. Daniels, David P. Swenson, and Cassandra Klingman, Farney Daniels PC, 800 S. Austin Avenue, Suite 200, Georgetown, TX 78626;

Andrew D. Manitsky, Gravel & Shea PC, 76 St. Paul Street, 7th Floor, P.O. Box 369, Burlington, VT 05402-0369.


Dated: April 6, 2015                  */s/ W. Bryan Farney*
                                           W. Bryan Farney

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ..............................................................................i

STATEMENT OF RELATED CASES PER FED. CIR. R. 47.5 ...........................1

JURISDICTIONAL STATEMENT ........................................................................4

STATEMENT OF THE ISSUE...............................................................................5

STATEMENT OF THE CASE.................................................................................5

INTRODUCTION ...................................................................................................7

STATEMENT OF THE FACTS ............................................................................12

    A.    The Klein Patents ................................................................12

    B.    Enforcement And Licensing Considerations Presented By The Klein Patents...........................................................................13

    C.    The Klein Patents Licensing Effort Followed Federal Law ...............14

    D.    Vermont's Intervention And Suit...........................................17

    E.    Proceedings On Original Complaint ..................................19

    F.    The BFAPIA Is Included In The Amended Complaint ....................20

    G.    Second Removal And Remand ........................................21

THIS COURT HAS JURISDICTION OVER THIS APPEAL..............................22

SUMMARY OF THE ARGUMENT .....................................................................23

STANDARD OF REVIEW ...................................................................................24

ARGUMENT .........................................................................................................24

I.    THE DISTRICT COURT ERRED IN CONCLUDING MPHJ'S REMOVAL DID NOT SATISFY THE REQUIREMENTS OF 28 U.S.C. § 1442(A)(2) .................................................................25

A.   The Elements Of §1442(a)(2) Not Relied Upon By The District
     Court Are Plainly Satisfied .................................................................29

     1.   MPHJ Is A Property Holder Under §1442, Which Is Not
          Limited To Real Property ........................................................30

     2.   MPHJ's Patents Are Derived From A Federal Officer..............32

     3.   This Is An Action Directed At MPHJ As The Property Holder.34

B.   The District Court's Conclusion That §1442(a)(2) Did Not Apply
     Because The State's Attempt To Compel Compliance With The
     BFAPIA Does Not Affect The Validity Of Laws Of The U.S.
     Was Error As A Matter Of Law And Clearly Erroneous...................35

     1.   The BFAPIA Affects The Validity Of U.S. Laws......................36

     2.   The BFAPIA Is Implicated In The State's Amended
          Complaint..................................................................................39

II.   MPHJ'S REMOVAL IS TIMELY UNDER §1446(B)(3) ...........................42

A.   MPHJ Did Not, And Could Not, Have Ascertained A Right To
     Remove Pursuant To § 1442 On The Basis Of The BFAPIA As
     Of The September 18, 2013 Date Relied Upon By The District
     Court .................................................................................................44

     1.   The Enactment Of The BFAPIA Could Not Trigger MPHJ's
          Ascertainment Of Its Right To Remove ...................................46

     2.   The Reference To The BFAPIA In MPHJ's September 18,
          2013 Filing Demonstrates That It Did Not Ascertain The
          BFAPIA As A Basis For Removal, Which Is Reasonable As
          Both The State And The District Court Agree The Original
          Complaint Did Not Invoke The BFAPIA ...................................47

          (a)   MPHJ's Footnote In Its September 18, 2013 Filing
                Demonstrates That It Did Not Ascertain The BFAPIA
                Was Part Of The State's Original Complaint...................48

          (b)   MPHJ's Statement On September 18, 2013 Would Also
                Not Qualify As Receipt Of A Paper Under §1446(b)(3)..49

B.   MPHJ's Time For Removal Under §1446(b)(3) Began When It
     "Received" The Amended Complaint Within The Meaning Of
     That Section, Which Was When The State's Motion For Leave
     To File The Amended Complaint Was Granted .................................51

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................55

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Activision TV, Inc. & MPHJ Technology Investments, LLC v. Bruning*,
No. 14-2137 (8th Cir. Aug. 13, 2014) ...............................................23

*Activision TV, Inc. & MPHJ Technology Investments, LLC v. Bruning*,
slip op. (D. Neb. Sept. 2, 2014) ............................................2, 19, 40

*Activision TV, Inc. v. Bruning*,
2014 U.S. Dist. LEXIS 177173 (D. Neb. Dec. 2, 2014) ......................2

*Activision TV, Inc. v. Pinnacle Bancorp, Inc.*,
2014 U.S. Dist. LEXIS 4455 (D. Neb. Jan. 14, 2014) .........................2

*Albrecht v. A.O. Smith Water Prods.*,
2011 U.S. Dist. LEXIS 147730 (S.D.N.Y. Dec. 16, 2011)................26

*Andrews v. Daughtry*,
994 F. Supp. 2d 728 (M.D.N.C. 2014) .............................................50

*Arrival-Star, Inc. v. Descartes Sys. Group, Inc.*,
2004 U.S. Dist. LEXIS 22433 (S.D.N.Y. Nov. 5, 2004)........... 7-8, 14

*Bell Communs. Research, Inc. v. Fore Sys.*,
62 Fed. Appx. 951 (Fed. Cir. 2003)..................................................33

*Benitez Bithorn v. Rosello-Gonzalez*,
2002 U.S. Dist. LEXIS 15614 (D.P.R. 2002)........................36, 37, 38

*CBS, Inc. v. Snyder*,
762 F. Supp. 71 (S.D.N.Y. 1991) .....................................................49

*Chapman v. Powermatic, Inc.*,
969 F.2d 160 (5th Cir. 1992) ............................................................49

*In re Commonwealth's Motion*,
2013 U.S. Dist. LEXIS 119950 (E.D. Pa. Aug. 22, 2013) ................28

*In re Commonwealth's Request for Relief Against or Directed to
   Defender Ass'n of Pa.*,
   2013 U.S. Dist. LEXIS 116139 (M.D. Pa. Aug. 16, 2013) ...............................29

*Concordia Partners, LLC v. Pick*,
   2014 U.S. Dist. LEXIS 112571 (D. Me. Aug. 14, 2014) ..................................53

*Consolidated Fruit-Jar Co. v. Wright*,
   94 U.S. 92 (1877) ..................................................................................30

*Cresswell v. Sullivan & Cromwell*,
   771 F. Supp. 580 (S.D.N.Y. 1991) .........................................................41

*Crow v. Wyoming Timber Products Co.*,
   424 F.2d 93 (10th Cir. 1970) ..................................................................32

*Douklias v. Teacher's Ins. & Annuity Ass'n*,
   35 F. Supp. 2d 612 (W.D. Tenn.1998) ....................................................54

*Eng'g & Insp. Servs., LLC v. IntPar, LLC*,
   2013 U.S. Dist. LEXIS 146849 (E.D. La. Oct. 9, 2013) .........................1, 10

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
   527 U.S. 627 (1999) ...............................................................................30

*Freeman v. Blue Ridge Paper Prods., Inc.*
   551 F.3d 405 (6th Cir. 2008) ..................................................................52

*Galloway v. Forum Publishing Co.*,
   138 N.W.2d 798 (N.D.1965) ..................................................................54

*Glazer v. Chase Home Fin. LLC*,
   704 F.3d 453 (6th Cir. 2013) ..................................................................54

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
   362 F.3d 1367 (Fed. Cir. 2004) .......................................................*passim*

*Golan v. Pingel Enters., Inc.*,
   310 F.3d 1360 (Fed. Cir. 2002) ..................................................................9

*GP Indus. v. Eran Indus.*,
   500 F.3d 1369 (Fed. Cir. 2007) ..................................................................9

*Guangyu Wang v. Univ. of Nev., Reno*,
   2012 U.S. Dist. LEXIS 164039 (D. Nev. Nov. 15, 2012)..................................54

*Gunn v. Minton*,
   133 S. Ct. 1059 (2013)....................................................................................22

*Haddad v. Virginia Polytechnic Inst. & State Univ*.,
   1999 U.S. App. LEXIS 2209 (4th Cir. Feb. 12, 1999).......................................46

*Hewlett-Packard Co. v. MPHJ Technology Investments, LLC*,
   Case No. IPR2013-00309 (USPTO Nov. 19, 2014)............................................3

*Hewlett-Packard Co. v. MPHJ Technology Investments, LLC*,
   No. 15-1427 (Fed. Cir. Mar. 10, 2015)..................................................................3

*Hoffmann-La Roche Inc. v. Invamed Inc*.,
   213 F.3d 1359 (Fed. Cir. 2000) ....................................................................8, 14

*Houser v. Ammco Tools*,
   2013 U.S. Dist. LEXIS 93336 (D. Md. July 2, 2013) .......................................29

*Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc*.,
   272 F.3d 912 (7th Cir. 2001) ............................................................................41

*Isaacson v. Dow Chemical Co*.,
   517 F.3d 129 (2d Cir. 2008) ..............................................................................24

*Jefferson County v. Acker*,
   527 U.S. 423 (1999)..................................................................................... 25-26

*Judin v. United States*,
   110 F.3d 780 (Fed. Cir. 1997) ..................................................................*passim*

*Litton Sys. v. Honeywell, Inc*.,
   87 F.3d 1559 (Fed. Cir. 1996) ..........................................................................24

*Lovern v. GMC*,
   121 F.3d 160 (4th Cir. 1997) ............................................................................49

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
   695 F.3d 1322 (Fed. Cir. 2012) ...........................................................................9

*McDonough v. UGL Unicco*,
766 F. Supp. 2d 544 (E.D. Pa. 2011).................................................52

*Mesa v. California*,
489 U.S. 121 (1989)............................................................................27

*Mikohn Gaming Corp v. Acres Gaming, Inc.*,
165 F.3d 891 (Fed. Cir. 1998) ....................................................16, 17

*In re MPHJ Technology Investments, LLC*,
No. 14-137, Doc. 2-1 (Fed. Cir. May 14, 2014) ..................................1

*MPHJ Technology Investments, LLC v. Federal Trade Commission, et. al.*,
No. 14-cv-011 (W.D. Tex. filed Jan. 13, 2014)....................................3

*Pete v. United States*,
215 Ct. Cl. 377 (Ct. Cl.1978)..............................................................31

*Phillips v. Allstate Ins. Co.*,
702 F. Supp. 1466 (C.D. Cal. 1989) ...................................................46

*Ricoh Americas Corp. & Xerox Corp. v. MPHJ Technology Investments, LLC*,
No. IPR2013-00302 (USPTO Nov. 19, 2014)......................................4

*Ricoh Americas Corp., Xerox Corp. & Lexmark International Inc. v. MPHJ Technology Investments, LLC*,
No. IPR2014-00538 (USPTO Mar. 25, 2014)......................................4

*Ricoh Americas Corp., Xerox Corp. & Lexmark International Inc. v. MPHJ Technology Investments, LLC*,
No. IPR2014-00539 (USPTO Mar. 25, 2014)......................................4

*Roth v. Roth*,
1980 U.S. Dist. LEXIS 16694 (N.D. Ohio 1980)...............................33

*St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*,
809 F. Supp. 2d 524 (E.D. La. 2011)..................................................31

*Sullivan v. Conway*,
157 F.3d 1092 (7th Cir. 1998) ............................................................52

vii

*Sun Buick v. Saab Cars USA*,
26 F.3d 1259 (3d Cir. 1994) ...............................................................29

*Town of Davis v. W. Va. Power & Transmission Co.*,
647 F. Supp. 2d 622 (N.D. W. Va. 2007)........................................25, 36, 37, 39

*Travel Sentry, Inc. v. Tropp*,
497 Fed. Appx. 958 (Fed. Cir. 2012)...................................................14

*Univ. of Ky. Research Found., Inc. v. Niadyne, Inc.*,
2013 WL 5943921 (E.D. Ky. Nov. 5, 2013) .......................................50

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Ute Distrib. Corp.*,
455 Fed. Appx. 856 (10th Cir. 2012).................................................32

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*,
2014 U.S. App. LEXIS 8449 (2d Cir. May 6, 2014)........................32

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*,
933 F. Supp. 2d 613 (S.D.N.Y. 2013) ..........................................36, 38

*Vermont v. MPHJ Technology Investments, LLC*,
No. 14-1381 (Fed. Cir. May 16, 2014) ...........................................1, 5

*Webb Equip. Co. v. Auto Owners Ins. Co.*,
2010 U.S. Dist. LEXIS 49705 (W.D. Wash. Apr. 20, 2010) ............46

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001) ...........................................................49

*Willingham v. Morgan*,
395 U.S. 402 (1969)....................................................................27, 34

*Wolst v. Am. Airlines*,
668 F. Supp. 1117 (N.D. Ill. 1987)..................................................53

## Statutes

9 V.S.A. § 4197(b)(2) .........................................................................21

28 U.S.C. § 1295(a)(1)..................................................................... 4-5, 22

28 U.S.C. § 1338 ............................................................................19, 23

28 U.S.C. § 1441 ...................................................................................28

28 U.S.C. § 1442 ...............................................................................*passim*

28 U.S.C. §1442(a)(2) .......................................................................*passim*

28 U.S.C. § 1442(d) ...............................................................................30

28 U.S.C. § 1446(b)(3) .......................................................................*passim*

28 U.S.C. § 1447(d) ...........................................................................*passim*

28 U.S.C. § 1454 ...............................................................................6, 53

35 U.S.C. §§ 1(a), 2 & 3 .........................................................................32

35 U.S.C. § 2 .....................................................................................32, 34

35 U.S.C. § 261 .....................................................................30, 32, 34, 37

35 U.S.C. §§ 261, 271, 284, 285 & 287.................................................37

42 U.S.C. § 1982 .....................................................................................30

42 U.S.C. § 1983 .......................................................................................2

BFAPIA.............................................................................................*passim*

BFAPIA. A2770-A2772 .........................................................................8, 9

BFAPIA. A9-A17 ....................................................................................11

Consumer Protection Act.........................................................................9

Section 5 of the FTC Act .........................................................................3

Patent Infringement Act, 9 V.S.A. § 4197.........................................*passim*

Title 35 of the U.S. Code .........................................................................37

VCPA .................................................................................................*passim*

VCPA. A2763-A2773 ..............................................................................18

VCPA. A857-A858 ...................................................................................40

ix

Vermont Consumer Protection Act............................................................39

Vermont Consumer Protection Act, 9 V.S.A. §§ 2451 *et seq.* A2763-
    A2773..................................................................................................8

**Other Authorities**

Black's Law Dictionary ..........................................................................33

Black's Law Dictionary 444 (6th ed. 1990) ...........................................33

Rule 11 ...........................................................................1, 14, 15, 17

Rule 47.5 ..................................................................................................1

U.S. Constitution....................................................................................39

U.S. Constitution. A27 ...........................................................................37

Supremacy Clause of the U.S. Constitution ..........................................37

U.S. Patent No. 6,771,381.........................................................................3

U.S. Patent No. 7,986,426.....................................................................3, 13

U.S. Patent Nos. 7,477,410 ...................................................................4, 13

U.S. Patent Nos. 8,488,173 ...................................................................4, 13

ARTICLE: REMOVAL AND REMAND: A GUIDE TO
    NAVIGATING BETWEEN THE STATE AND FEDERAL
    COURTS, 23 Miss. C. L. Rev. 97, 119 (2004) .................................46

U.S. Const. amend. I .......................................................................*passim*

U.S. Const. amend. XIV ....................................................................2, 10, 37

## <u>STATEMENT OF RELATED CASES PER FED. CIR. R. 47.5</u>

Pursuant to Federal Circuit Rule 47.5, Appellant MPHJ Technology Investments, LLC ("Appellant" or "MPHJ") hereby describes the following related cases to this appeal.

MPHJ previously filed a separate Petition for Writ of Mandamus with this Court on whether the Vermont district court abused its discretion in denying MPHJ's Rule 11 Motion,[1] and appealed a remand of this case to state court.[2]  That Petition was denied by this Court in this Court's Order Dismissing MPHJ's Appeal for lack of jurisdiction pursuant to 28 U.S.C. § 1447(d). *See Vermont v. MPHJ Technology Investments, LLC*, No. 14-1381, Doc. 24 (Fed. Cir. Aug. 11, 2014).

A private party who received one of MPHJ's infringement inquiry letters brought suit against MPHJ in Louisiana. That suit was dismissed for lack of personal jurisdiction based upon this Court's well-settled law that a patent owner cannot be subject to personal jurisdiction in a foreign forum merely for sending patent letters there. *See Eng'g & Insp. Servs., LLC v. IntPar, LLC*, 2013 U.S. Dist. LEXIS 146849 (E.D. La. Oct. 9, 2013).

In contrast to the correct personal jurisdictional decision by the Louisiana District Court, the Vermont state court in this case, after the first remand, has ruled

---

[1] *See In re MPHJ Technology Investments, LLC*, No. 14-137, Doc. 2-1 (Fed. Cir. May 14, 2014) ("*In re MPHJ*").
[2] *See Vermont v. MPHJ Technology Investments, LLC*, No. 14-1381 (Fed. Cir. May 16, 2014).

1

that MPHJ is subject to personal jurisdiction in Vermont merely for having sent letters to companies in Vermont inquiring whether they were infringing MPHJ's patents. *See* A1136-A1143. This, of course, is a clear violation of the Fourteenth Amendment law consistently applied by the federal courts, including this Court, and MPHJ reserves all available remedies for this violation of its Fourteenth Amendment rights.

The Nebraska Attorney General sent MPHJ's counsel, Farney Daniels, a Cease and Desist Order requiring it to immediately stop representing MPHJ in patent suits or assisting MPHJ in sending patent letters. MPHJ intervened into a lawsuit filed by another client of Farney Daniels to whom the Order was also directed, and MPHJ moved for a preliminary injunction under 42 U.S.C. § 1983 against the enforcement of that Order, which was granted by the Nebraska District Court. *See Activision TV, Inc. v. Pinnacle Bancorp, Inc*., 2014 U.S. Dist. LEXIS 4455 (D. Neb. Jan. 14, 2014) (incorporating the district court's order in *Activision TV, Inc. v. Pinnacle Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 140805 (D. Neb. Sept. 30, 2013)). Summary judgment was then granted in MPHJ's favor. *Activision TV, Inc. & MPHJ Technology Investments, LLC v. Bruning,* slip op. at 4-7 (D. Neb. Sept. 2, 2014). Final Judgment was entered against the Nebraska Attorney General, including a permanent injunction against further interference with MPHJ and its counsel, and an order that he pay MPHJ's fees and costs. *See Activision TV, Inc. v. Bruning,* 2014 U.S. Dist. LEXIS 177173, at *2 (D. Neb. Dec. 2, 2014).

In response to a draft complaint sent by the FTC to MPHJ, alleging that MPHJ violated Section 5 of the FTC Act by sending its letters, MPHJ filed a declaratory judgment suit against the FTC, arguing, *inter alia*, that its patent enforcement activity is protected by the First Amendment. *See MPHJ Technology Investments, LLC v. Federal Trade Commission, et. al.*, No. 14-cv-011 (W.D. Tex. filed Jan. 13, 2014). The FTC's Motion to Dismiss the suit was granted for lack of jurisdiction, though in the decision the Court acknowledged the applicability of the First Amendment law cited by MPHJ. *See MPHJ Technology Investments, LLC v. Federal Trade Commission, et. al.*, No. 14-cv-011, Doc. 38 (W.D. Tex. Sept. 16, 2014). MPHJ and the FTC have since reached a Consent Agreement.

In 2013 Hewlett-Packard Co. filed an *inter partes* review regarding certain claims of U.S. Patent No. 6,771,381, owned by MPHJ. On November 19, 2014, the USPTO issued its final written decision, upholding the validity of claim 13 of the '381 Patent. *See Hewlett-Packard Co. v. MPHJ Technology Investments, LLC*, Case No. IPR2013-00309 (USPTO Nov. 19, 2014) (final written decision regarding the '381 patent). Hewlett-Packard Co. has appealed that decision to this Court, which remains pending. *See Hewlett-Packard Co. v. MPHJ Technology Investments, LLC*, No. 15-1427 (Fed. Cir. Mar. 10, 2015).

In 2013, Ricoh Americas Corp. and Xerox Corp. filed an *inter partes* review regarding certain claims of U.S. Patent No. 7,986,426, owned by MPHJ. On November 19, 2014, the USPTO issued its final written decision, upholding

3

validity of claim 6 of the '426 Patent. *Ricoh Americas Corp. & Xerox Corp. v. MPHJ Technology Investments, LLC*, No. IPR2013-00302 (USPTO Nov. 19, 2014) (final written decision regarding the '426 patent). Ricoh and Xerox moved for reconsideration of the USPTO's final written decision, which was denied on January 28, 2015. *See Ricoh Americas Corp. & Xerox Corp. v. MPHJ Technology Investments, LLC*, No. IPR2013-00302 (USPTO Jan. 28, 2015).

Finally, in 2014, Ricoh Americas Corp., Xerox Corp. and Lexmark International Inc. filed an *inter partes* review regarding certain claims of U.S. Patent Nos. 7,477,410 and 8,488,173, owned by MPHJ. *See Ricoh Americas Corp., Xerox Corp. & Lexmark International Inc. v. MPHJ Technology Investments, LLC*, No. IPR2014-00538 (USPTO Mar. 25, 2014); *Ricoh Americas Corp., Xerox Corp. & Lexmark International Inc. v. MPHJ Technology Investments, LLC*, No. IPR2014-00539 (USPTO Mar. 25, 2014). The USPTO has not yet issued a final written decision regarding the validity of the claims of the '410 Patent and '173 Patent.

## <u>JURISDICTIONAL STATEMENT</u>

This appeal is from the final decision of the district court remanding the present case where the case was removed to federal court on the basis that it had jurisdiction under at least 28 U.S.C. §1442(a)(2). *See* A24-A29. Under 28 U.S.C. § 1447(d), the district court's remand decision related to this jurisdictional basis is appealable. This Court also has jurisdiction over this appeal under 28 U.S.C.

4

§ 1295(a)(1), as further explained below.

## STATEMENT OF THE ISSUE

The issue presented is whether the district court erred in concluding it did not have jurisdiction under 28 U.S.C. § 1442(a)(2).

## STATEMENT OF THE CASE

This case began with Plaintiff-Appellee State of Vermont filed a state court suit against MPHJ for MPHJ's sending of letters to suspected infringers in Vermont, inquiring as to their potential infringement. A2763-A2773.  MPHJ timely removed the case to federal court, and the U.S. District Court for the District of Vermont subsequently remanded the case to state court on grounds the State's original complaint did not provide a basis for federal jurisdiction. A2703-A2731.  MPHJ filed an appeal of that decision to this Court, which was dismissed under 28 U.S.C. § 1447(d) on grounds that MPHJ could not appeal the decision. *See Vermont v. MPHJ Technology Investments, LLC*, No. 14-1381, Doc. 24 (Fed. Cir. Aug. 11, 2014).

Prior to the district court's decision to remand the case, the State filed a Motion for Leave to file an Amended Complaint. A4104-A4105.  The district court, in its remand order, indicated that it declined to rule on the Motion for Leave to file an amended complaint, leaving that motion for the state court to decide. A2704; A2728. On remand, the state court granted the State's Motion for Leave to file an Amended Complaint on August 28, 2014. A1137.  The Amended

5

Complaint, for the first time, invoked the new Vermont anti-patent letter law, the

Vermont Bad Faith Assertions of Patent Infringement Act ("BFAPIA"), 9 V.S.A. §

4197. A850-A859. The seeking of relief under that Act gave rise to new bases for

removal to federal court, and MPHJ thereby timely removed the case to federal

court on September 9, 2014. A24-A29. In doing so, MPHJ cited three grounds for

federal jurisdiction, only one of which – Section 1442(a)(2) – is the subject of this

appeal.[3] *Id.*

The grounds for federal jurisdiction raised by this appeal is found under 28

U.S.C. § 1442(a)(2). The applicability of this jurisdictional statute to patent cases

presents a question of first impression for this Court. The district court declined to

conclude whether the statute covered patent owners, but ruled that, even if it did,

one element of the Section 1442(a)(2) jurisdiction was not met. A15-A17. The

court based this ruling on the conclusion that the Vermont statute in question, the

BFAPIA, was not part of the State's Amended Complaint. *Id*. For related reasons,

the court also ruled that MPHJ's removal under the statute was untimely. A9-A15.

As a result, the court remanded. MPHJ presents this appeal on grounds that the

district court's conclusion that it did not have jurisdiction under 28 U.S.C. §

1442(a)(2) because the BFAPIA is not part of Vermont's Amended Complaint was

---

[3] MPHJ would have appealed a second basis for removal jurisdiction, 28 U.S.C. §
1454, but when Congress enacted that section in 2011 to provide for removal of
cases having certain patent-related counterclaims, it neglected to also amend 28
U.S.C. § 1447(d), thus making remand related to that statute currently not
appealable.

in error, and its decision for similar reasons that MPHJ's removal was untimely under 28 U.S.C. § 1446(b)(3) was also in error.

## **INTRODUCTION**

This case is highly unusual and for the first time brings before this Court an attempt by a State to have a patent owner compelled to comply with a state law designed to prevent enforcement of certain kinds of patents, by certain types of patent owners.  In short, Vermont has chosen to create its own variant of patent law that is inconsistent in material respects with the federal patent system.  The State's efforts have been acknowledged to be intended to make Vermont a patent haven, where it would be more difficult to enforce U.S. patents against infringers than it is in other states, as least as to certain types of patents and certain types of patent owners.

As will be explained in more detail below, MPHJ is the owner of patents that present unusual enforcement challenges.  The patents cover commonly used networked scanner systems which are only directly infringed by end-users, and whose use typically can only be suspected, but not confirmed, from publicly available information.  In that instance, this Court's law requires that suit cannot be filed against the suspected infringer without the patent owner first making inquiry regarding the suspected infringement (to either confirm, or disprove, the suspected infringement).  *See Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997).  *See also Arrival-Star, Inc. v. Descartes Sys. Group, Inc*., 2004 U.S. Dist. LEXIS 22433

at *36 (S.D.N.Y. Nov. 5, 2004); *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-65 (Fed. Cir. 2000).

To that end, in the fall of 2012 and early spring of 2013, MPHJ sent such infringement inquiry letters to certain suspected infringers in Vermont.  At about the same time, certain companies in Vermont had approached the Vermont Attorney General asking him to take action against so-called "patent trolls." A383-A385. As the Vermont AG has publicly stated, this suit followed as a result. A383-A388.

The suit was originally brought under the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. §§ 2451 *et seq*. A2763-A2773.  It was not brought under the BFAPIA, as that Act had not been enacted as of the date of the filing of the State's original complaint.  However, the Act was in the legislative process at that time, and the Vermont AG has made clear that the Act was designed in part specifically for the purpose of preventing MPHJ's sending of infringement inquiry letters. A383-A388.

The original complaint alleged a number of acts by MPHJ that purportedly violated the VCPA, which acts would now violate the BFAPIA. A2770-A2772.  A review of the key part of the original complaint – Paragraphs 56 and 57 – will reveal to the Court that the allegations made by Vermont in its complaint are largely unrecognizable in the otherwise uniform national patent law. *Id.* As just one example, among the acts Vermont contends violate its state laws, is a patent

8

owner contacting a suspected infringer about their potential infringement if the infringer is "too small" to afford a patent attorney. *Id.* Clearly, however, there is no immunity based on company size or ability to afford an attorney for infringement under the federal patent laws.

Of even more importance is the fact that Vermont also purports to be able to entirely ignore the First Amendment "right to petition" clause, which this Court has repeatedly held prevents the assertion of state (and federal) law against a patent owner for sending pre-suit correspondence, unless that conduct was both objectively baseless, as well as subjectively baseless. *See, e.g., Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374-76 (Fed. Cir. 2004). Vermont's position is that it can assert its Consumer Protection Act, and the BFAPIA, without any showing of baselessness. *See, e.g.,* A3935. Indeed, Vermont's position is that the merits of the underlying infringement and validity issues are entirely irrelevant to its case.[4]

As relief for MPHJ's alleged violation of the VCPA, the original complaint was notable in seeking two forms of relief (in additional to penalties and fees and costs):

---

[4] This position is, of course, entirely inconsistent with the law of this Circuit. *See, e.g., Globetrotter*, 362 F.3d at 1374-76; *Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1332 (Fed. Cir. 2012); *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008); *GP Indus. v. Eran Indus.*, 500 F.3d 1369, 1374-75 (Fed. Cir. 2007); *Golan v. Pingel Enters., Inc.*, 310 F.3d 1360, 1370-74 (Fed. Cir. 2002).

1.    A permanent injunction prohibiting Defendant from engaging in any business activity in, into or from Vermont that violates Vermont law.

2.    A permanent injunction requiring Defendant to stop threatening Vermont businesses with patent-infringement lawsuits.

A2772.  Note as to this latter form of relief, that Vermont expressly intends this injunction to apply without regard to the protections afforded to patent owners under the First Amendment. And, as noted, the Vermont AG and the State have made it clear that they do not believe that the law of *Globetrotter* applies in Vermont, that Vermont is free to ignore this law in their state action, and thus seek an injunction that would ignore MPHJ's First Amendment rights.[5] A3935.

MPHJ removed the original complaint to federal court, where the federal court indicated that the State's second request for relief, seeking to forever bar MPHJ from enforcing its patents in Vermont, might give rise to a federal question. A2729-A2731; A4250-A4257; A4268-A4270; A4311-A4313.  In response, the State filed a Motion for Leave to Amend Its Complaint, where it made one change,

---

[5] That this is no idle threat, but a real possibility, is demonstrated by the fact that a Vermont state court has already ruled that it will completely disregard the Fourteenth Amendment due process protections afforded to patent owners who cannot be subjected to personal jurisdiction in a state where their only contact is sending a patent enforcement letter. *See* A1136-A1143. This Court's law on that is clear, and a federal district judge made precisely that ruling in MPHJ's case, and yet the Vermont state court simply concluded it would ignore the Fourteenth Amendment in finding personal jurisdiction over a disfavored out-of-state defendant. *Compare Eng'g & Insp. Servs., LLC v. IntPar, LLC*, 2013 U.S. Dist. LEXIS 146849 (E.D. La. Oct. 9, 2013) *with* A1136-A1143.  Given this stark violation of MPHJ's Fourteenth Amendment rights, the State's position that Vermont state courts will similarly be willing to ignore the First Amendment appears well-founded.

and, as importantly, chose not to make another. A4100-A4105. The first change

the State made was to delete the second request for relief listed above, seeking an

injunction permanently barring MPHJ from enforcing its patent in Vermont. A858-

A859.

The change Vermont chose not to make is the more important one for

purposes of this appeal. Vermont chose to keep intact the first request for relief,

which seeks an injunction compelling MPHJ to comply with Vermont law. *Id.*

Critically, by the time Vermont sought leave to amend its complaint, the BFAPIA

had been enacted. *See* 9 V.S.A. § 4197 (effective July 1, 2013). Thus, at this point,

in seeking leave to file an Amended Complaint which included a request for an

injunction compelling MPHJ to comply with Vermont law, the Amended

Complaint indisputably now sought to compel MPHJ to comply with the BFAPIA.

In contrast, the original complaint at the time of its filing, and removal to federal

court, sought only to enforce the VCPA, as the BFAPIA was not enacted until

later.

In connection with the remand decision on appeal here, the State argued, and

the district court agreed, that the Amended Complaint also only sought relief under

the VCPA, and not the BFAPIA. A9-A17.  But, as described above, and in much

more detail later in this brief, this conclusion plainly is incorrect.  The allegations

made in the Amended Complaint are contended by the Vermont AG to also

constitute violations of the BFAPIA, in addition to the VCPA.  Indeed, he has

11

contended that the BFAPIA was specifically designed to prohibit MPHJ's attempts to send infringement inquiry letters. A383-A388.  Thus, in seeking leave to file an Amended Complaint after the BFAPIA was passed, if the Vermont AG had intended to not seek an injunction compelling MPHJ's compliance with that Act, he could have amended the first request for relief as well, and limited it to seeking an injunction compelling compliance only with the VCPA. That he did not is clear evidence that the Amended Complaint seeks to compel compliance with the BFAPIA, which gives rise to federal jurisdiction under Section 1442(a)(2), as MPHJ explains further below.

In the following, MPHJ sets forth the relevant background, describes the proceedings below, explains this Court has jurisdiction, and then presents its argument regarding the error made by the district court in concluding that it did not have jurisdiction over the case presented by the Amended Complaint under Section 1442(a)(2).

## STATEMENT OF THE FACTS

### A.    The Klein Patents

In 2012, MPHJ acquired from Project Paperless LLC certain U.S. patents covering inventions by Laurence Klein. A4223-A4224.  The Klein patents relate to networked scanning systems that are connected and interfaced such that they permit the automatic and seamless transmission of a scanned document image into application software running on a destination computer. *Id.* A common example of

a modern system that likely would infringe could be found in a business having a Local Area Network ("LAN"), and a scanner and employee computers running email software such as Microsoft Outlook connected to the LAN, where a document may be scanned and transmitted via the LAN as an attachment into the email on an employee's computer with the push of a button. *Id.* Such systems are now in widespread use.

The PTO has awarded five patents on aspects of the invention.[6] It is worth noting that the fifth patent (the '173 Patent) was issued by the PTO after an IPR had been filed on two of the earlier patents, and the PTO examiner had in hand all of the relevant art that could be found by a consortium of most of the major scanner and information technology companies in the world. It is also worth noting that two of the patents have now been through the IPR process, a process well-known to be difficult for patent owners, and in each case, a claim of the patent was held valid. *See Statement of Related Cases.*

### B. <u>Enforcement And Licensing Considerations Presented By The Klein Patents</u>

Seeking remedy for the widespread infringement of the Klein patents presents challenges for the patent owner. First, because the Klein Patents cover the entire networked system, no single manufacturer of a scanner, or a server, or any employee computer, has liability for the infringement. Only the businesses that

---

[6] U.S. Patent Nos. 8,488,173; 7,477,410; 6,185,590; 6,771,381; and 7,986,426. A4529-A4930.

make, sell, or use the entire covered system would infringe.[7] Thus, MPHJ can seek

redress for infringement only from an end-user, not any particular manufacturer.

The second enforcement challenge is that for those businesses that can be

identified as likely having an infringing system, confirmation of that infringement

from publicly available information typically is not possible. The type of

networked system used by a business is neither ordinarily observable through

public inspection, nor from any published information. A4223-A4224.  As

explained, this raises an issue of satisfying Rule 11 before any suit may be filed to

address that infringement.  Under this Court's law in *Judin*, 110 F.3d at 784, a

patent owner is required in this situation to first make inquiry of the suspected

infringer to attempt to confirm the infringement before suit may be brought.[8]

### C.    The Klein Patents Licensing Effort Followed Federal Law

To address these challenges, the prior owner of the Klein patents, Project

Paperless, LLC, prepared a series of letters to be sent to suspected infringers with

the goal of confirming the suspected infringement and seeking to resolve the

---

[7] Contributory infringement would not apply because the components, such as the scanner, have substantial noninfringing uses.  Inducement of infringement also does not apply, given the manufacturers apparent belief in invalidity, and other requirements for inducement, and that MPHJ would still need to confirm direct infringement. *See generally Travel Sentry, Inc. v. Tropp*, 497 Fed. Appx. 958, 967 (Fed. Cir. 2012).

[8] Other decisions by this Court and the district courts have made it clear that in such situations, a patent owner may satisfy its Rule 11 obligation by making inquiry of a suspected infringer. *See, e.g., Hoffmann-La Roche Inc.*, 213 F.3d at 1363-65; *Arrival-Star, Inc.*, 2004 U.S. Dist. LEXIS 22433 at *36.

14

infringement by agreement, or otherwise at least satisfy the Rule 11 requirements in order to bring suit. A4236-A4242. MPHJ acquired the Klein patents from Project Paperless, and used that company's counsel, and its own counsel, to ensure that its efforts to seek redress for infringements of the patents would comply with law. A4224-A5225.  It devised its own series of letters, using some portions of the text from Project Paperless' letters, but adding substantially more emphasis on the point that if the recipient did not infringe, it should simply let MPHJ know so MPHJ could know to discontinue contact with that particular entity.[9] *See* A4244-A4266.

Using experts and counsel, MPHJ carefully evaluated which companies were likely infringers, based upon business type and size, such that it would be reasonable to inquire regarding their suspected infringement. *Id.*; A4230-A4234. With companies likely to have infringing systems thus identified, MPHJ then sent letters inquiring whether such companies had an infringing system.[10] *Id*.

The Court will see that the letters were emphatically clear that if the recipient did not have an infringing system – and provided easy ways for most non-infringers to self-identify – that MPHJ had no interest in further inquiry, and

[9] Because MPHJ anticipated the need for a large licensing effort, it divided the effort among subsidiaries who each were exclusive licensees based upon business type and a numeric code. A4226.  For convenience here, MPHJ refers to itself and these entities collectively, though it was the entities that sent the accused letters.
[10] Experience proved that MPHJ's identification system was reasonable, as a substantial majority of responding recipients who met MPHJ's criteria did not deny having infringing systems. A4227.

certainly no interest in seeking any license or settlement. A4200-A4204; A4206; A4208. On the other hand, for those recipients that did have infringing systems, MPHJ lawfully explained that those entities needed a license, and that MPHJ would take such steps as were necessary in order to enforce its rights. *Id*.

The first letter sent by MPHJ explained generally the scope of the Klein patents, and that MPHJ believed it was likely that the recipient had a system that would be covered by claims of the patents. A4200-A4204. The letter then explained that if the recipient did have an infringing system, a license was needed. *Id*. But, importantly, the letter also conveyed that if the recipient did not have an infringing system, no license was needed, and MPHJ wished only to be so informed by the recipient so it would know to discontinue contact. *Id*. This first letter was thus consistent with a lawful and appropriate licensing campaign, as it provided to the recipient, a likely infringer, proper notice of the patents and offered a license. *See, e.g., Mikohn Gaming Corp v. Acres Gaming, Inc*., 165 F.3d 891, 897 (Fed. Cir. 1998) ("A patentee has a right to inform a potential infringer of the existence of the patent.").

The second letter was sent only to recipients who did not to respond to the first letter. A4206. The Court can see that the letter from counsel simply advised the recipient that the client, MPHJ, had sent the first letter, and asked for a response. *Id*.

The third letter was sent only to recipients who had ignored both the first

and the second letter from MPHJ. A4208.  The Court can read that third letter to

see that it had, in effect, two purposes. *Id.* The first purpose was much the same as

that of the second letter.  It explained that no response had been received to either

of the first two letters, and then repeated the essential message that if the recipient

had an infringing system, it needed a license, <u>and that if it did not have an</u>

<u>infringing system, it did not need a license, and only needed to so inform the</u>

<u>sender so that the matter could be closed</u>. *Id.*

But the third letter also had a second purpose of ensuring that a later court

would conclude that MPHJ had taken thorough and reasonable steps to make a

reasonable pre-suit inquiry sufficient to satisfy its Rule 11 obligation under *Judin.*

Thus, the letter made clear to the recipient that if it did not respond to the third

letter, MPHJ would make the reasonable assumption of infringement, and would

believe it had a basis to bring suit. *Id.*  So that this would be clear to the recipient, a

draft complaint was included. A4209-A4217.

### D.     <u>Vermont's Intervention And Suit</u>

The Vermont AG has indicated that he first started looking into what he

referred to as the "patent troll problem" in 2012 before MPHJ sent any letters.

A383-A388.  He has explained that he did so at the request of certain of his

constituents and political supporters, who were looking to see if he could help

make it more difficult to enforce patents in Vermont. *Id.*  MPHJ thus had the

misfortune of being the first non-practicing entity to come along after the Vermont

17

AG gained his newfound interest in patent enforcement, and the misfortune to own patents which require for their enforcement the sending of a letter under *Judin*. As a result, within a few months of first sending an inquiry letter into Vermont, MPHJ received from the Vermont AG a Civil Investigative Demand ("CID") in January 2013. *Id.*

In response to that CID, MPHJ explained the reason and purpose of its letters, and provided the State the information it requested so it could review the matter. As far as MPHJ understood, the Vermont AG at that time recognized that MPHJ's activity was lawful, and constitutionally protected. MPHJ then temporarily halted any enforcement activity in Vermont as it waited to hear back from the Vermont AG, whose office stated it would contact MPHJ if it needed further information. Instead, four months later, with no warning, and in a precipitous action at odds with usual practice, the Vermont AG sued MPHJ. That suit asserted sixteen different claims, relying upon the VCPA. A2763-A2773.

Review of those claims renders it apparent that this case has nothing do with MPHJ *per se*, but instead the Vermont AG's newfound interest in the "patent troll" issue. The State of Vermont has decided it disagrees with the federal patent statute, and this Court's jurisprudence, and now seeks to interject itself into the federal patent system to change the patent laws as they apply to Vermont infringers.[11] As

_____

[11] The State's Amended Complaint presents sixteen allegations which, when individually reviewed, make it clear that none of the allegations relate to objective baselessness, all are legally meritless, and many, on their face, are simply

18

the Vermont AG has stated regarding the former Chief Judge's view on patent

litigation being best handled by the courts: "[I]f they have all this authority, why

haven't they addressed this bad-faith patent assertion problem yet? My view is you

haven't taken care of your business and now Congress, and hopefully the states,

are going to do it." A388. True to its word, the State has openly insisted it can

ignore this Court's objective and subjective baselessness predicate for assertions of

state law in connection with patent enforcement correspondence, as set forth in

*Globetrotter*, and find MPHJ liable for violating the VCPA without even

addressing the underlying merits of validity and infringement.[12] *See, e.g.,* A3935.

### E.     Proceedings On Original Complaint

MPHJ removed the state suit based on Vermont's original complaint to

federal district court under 28 U.S.C. §§ 1338. A2729-A2731.  As noted, the

district court initially indicated that the State's first request for relief (seeking an

_____

nonsensical. A857-A858.  For example, the State claims in ¶56c that it violates
state law for a patent owner to send a patent infringement inquiry letter to a
company too small to afford a patent attorney. *Id.*  In ¶56g, the State claims it
violates state law for a patent owner to use exclusive licensees to carry out its
licensing effort. *Id.* In ¶56d (and in ¶56b&e and ¶56c&f), the State flatly forbids
the inquiry required by this court in *Judin*, where infringement is suspected but
cannot be confirmed from public information. *Id.* Other allegations made by the
State similarly seek to bar patent owners from enforcing rights they have under the
federal laws and the Constitution, and in the manner permitted by those laws.
[12] The State has expressly disavowed, and is now estopped, from proving anything
regarding the validity or infringement of the patents, and as such, the State cannot
avoid preemption.  Indeed, a federal court has already considered every single
allegation made by Vermont, and concluded that none of them relate to objective
baselessness. *See Activision TV, Inc. & MPHJ Technology Investments, LLC v.
Bruning,* slip op. at 4-7 (D. Neb. Sept. 2, 2014).

injunction permanently barring MPHJ from ever enforcing its patent in Vermont) might give rise to federal jurisdiction. A4250-A4257; A4268-A4270; A4311-A4313. Vermont then sought leave to file an Amended Complaint, which included a request to have MPHJ compelled to comply with Vermont law inclusive of the BFAPIA, but the district court remanded the case without ruling on the motion for leave.[13] A4100-A4105; A2704.

In state court, the court granted the motion for leave to file the amended complaint on August 28, 2014, and MPHJ then filed its Answer and Counterclaims, and timely filed a notice of removal on several grounds, including Section 1442(a)(2). A1137; A1968-A1998; A24-A29.

### F.    The BFAPIA Is Included In The Amended Complaint

As has been explained, in the Amended Complaint, filed after enactment of the BFAPIA, Vermont chose to not exclude the BFAPIA from its demand for relief seeking an injunction compelling MPHJ to comply with Vermont law. A858-A859.  As a result, the suit as represented by the Amended Complaint now seeks to compel MPHJ's compliance with the BFAPIA.  That Act, among other things, compels a patent owner to forego many rights and obligations it has as a patent owner under U.S. laws. 9 V.S.A. § 4197.

For example, on its face, the Act permits finding patent correspondence to

---

[13] As noted, MPHJ filed an appeal of that decision to this Court, which was dismissed under Section 1447(d).

be in bad faith if the correspondence does not provide an analysis comparing the claims to the suspected infringer's products, something MPHJ has explained is not possible in the context of a *Judin*-type inquiry. 9 V.S.A. § 4197(b)(2).  It is for this reason MPHJ was required by federal law to send inquiries regarding infringement, a factor the BFAPIA does not recognize. *Id*. The Act also expressly permits consideration of whether MPHJ practices the patent in determining whether its conduct was in bad faith, an issue of no relevance to infringement under federal law. *Id*. at § 4197(c)(4 & 5).  Further, the Act permits liability to be found without requiring proof of objective baselessness and subjective baselessness, which also violates the First Amendment, as established by *Globetrotter. Id.* These are but a few examples of where the Act plainly improperly and unlawfully impacts MPHJ's lawful and protected enforcement activities.  Below MPHJ more fully explains how the BFAPIA violates MPHJ's patent rights and federal law.

### G.    <u>Second Removal And Remand</u>

In remanding the case in view of MPHJ's removal under Section 1442(a)(2), the district court noted that the statute had not previously come up in a patent case, and expressed some skepticism as to whether the statute should apply. A15-A17. But, ultimately, the court grounded its conclusion that it did not have jurisdiction under Section 1442(a)(2) on the surprising finding that the BFAPIA was not part of the State's Amended Complaint. A9-A17. This was pure error, as MPHJ explains below.

21

Separately, and inconsistently, despite finding that the BFAPIA was not part of the State's original complaint, or the Amended Complaint, the court found that MPHJ was untimely in removing the case under Section 1442(a)(2) because, according to the district court, MPHJ could have "ascertained" that the BFAPIA was part of the state's suit even in the original complaint (despite the fact that the State still insists it is not part of the case, and the district court agreed with the State). A9-A15. This finding by the district court was also plain error, and ignores the large body of law on the proper application of Section 1446(b)(3). It also ignores the well-settled law that in contrast to removals under "federal question" principles, removals under Section 1442(a)(2) are to be liberally construed in favor of the removing party, to properly effect the Congressional intent to have state-based challenges to federally-derived property rights heard in federal court.

## THIS COURT HAS JURISDICTION OVER THIS APPEAL

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1295(a)(1). Section 1295(a)(1) provides in pertinent part that this Court has jurisdiction over a district court decision "in any civil action . . . arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." Here, the State's case does "arise under" the U.S. patent laws as that term is defined in *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). Additionally, here MPHJ has asserted counterclaims of invalidity and noninfringement, each of which plainly arises under the U.S. patent laws. A1968-

A1998. This Court has jurisdiction on this basis as well. 28 U.S.C. § 1338. Thus, on each of these independent grounds, this Court has jurisdiction. The Eighth Circuit, in a similar case involving MPHJ, involving allegations of violations of state law in the sending of patent enforcement letters, agreed that jurisdiction properly lies in this Court. *See Activision TV, Inc. & MPHJ Technology Investments, LLC v. Bruning,* No. 14-2137 (8th Cir. Aug. 13, 2014) (order transferring case to the Federal Circuit).

## SUMMARY OF THE ARGUMENT

The district court erred in remanding the state suit, which MPHJ had properly removed to federal court under 28 U.S.C. § 1442(a)(2). Specifically, the district court held that the requirement under Section 1442(a)(2) that the action affect the validity of a federal law was not met in this case because the district court concluded that the BFAPIA was not part of the State's Amended Complaint. A9-A17. This conclusion was in error, and the rest of Section 1442(a)(2) is satisfied here, and thus the district court erred in finding it did not have jurisdiction under that section. *Id.* Separately the district court held that even if Section 1442(a)(2) had been satisfied, MPHJ's removal was not timely under Section 1446(b)(3) because MPHJ was aware of the enactment of the BFAPIA well before MPHJ filed its Notice of Removal. *Id.* But the alleged "awareness" of the BFAPIA relied upon by the court did not suffice to trigger Section 1446(a)(3) under the facts presented, and the law, and the district court's holding that MPHJ's removal

was untimely was in error and should be reversed.

## STANDARD OF REVIEW

The propriety of a removal under 28 U.S.C. § 1442 and the existence of subject-matter jurisdiction are reviewed *de novo*. *Isaacson v. Dow Chemical Co.,* 517 F.3d 129, 135 (2d Cir. 2008).  When employing the *de novo* standard of review, the appellate court is placed in the same position as the lower court and is equally equipped with the materials needed to decide the issue. *Id. See also Litton Sys. v. Honeywell, Inc.,* 87 F.3d 1559, 1566 n.1 (Fed. Cir. 1996) ("By use of the term *de* novo, this court means that it does not defer to the lower court ruling or agency decision in question") (citation omitted).

## ARGUMENT

MPHJ removed the State's case as presented by the Amended Complaint in part under 28 U.S.C. § 1442(a)(2). A24-A29. The district court remanded on grounds that the terms of §1442(a)(2) were not satisfied, and alternatively that MPHJ removed after the time permitted for removal under 28 U.S.C. § 1446(b)(3). A9-A17.  Thus, the issues raised on this appeal are whether the district court erred in concluding that MPHJ's removal did not satisfy the requirements of §1442(a)(2), and in concluding that MPHJ's removal was untimely under §1446(b)(3).

The district court expressed several different reservations about MPHJ's position both as to the applicability of §1442(a)(2) and the timing under

24

§1446(b)(3).  However, ultimately, his decision to remand rested on his conclusion that the BFAPIA was not part of the State's case before or after the filing of the Amended Complaint, and separately (and somewhat inconsistently) that MPHJ's removal was untimely because that Act was known to MPHJ prior to the State's attempt to enforce it by the filing of the Amended Complaint. A9-A17.

MPHJ demonstrates below first that §1442(a)(2) does apply here to give the district court jurisdiction over this case, and second that its removal on that basis was timely.  The district court's holdings to the contrary were error, and should be reversed.

## I.    THE DISTRICT COURT ERRED IN CONCLUDING MPHJ'S REMOVAL DID NOT SATISFY THE REQUIREMENTS OF 28 U.S.C. § 1442(A)(2)

This is a case of first impression for this Court as to the applicability of 28 U.S.C. § 1442(a)(2) to patent owners.  Section 1442(a)(2)  presents an exception to the general rule that a federal defense cannot provide the basis for federal jurisdiction.  Most §1442 matters relate to state actions brought against federal officers, and reflect the express intention of Congress that the federal courts have jurisdiction over such matters. Section 1442(a)(2) covers instead certain state actions brought against owners of federally-derived property rights, and reflects Congress' intention that federal courts also retain jurisdiction over these types of actions.  *See, e.g., Town of Davis v. W. Va. Power & Transmission Co.*, 647 F. Supp. 2d 622, 627 (N.D. W. Va. 2007) citing *Jefferson County v. Acker*, 527 U.S.

25

423, 431 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law . . . **this reasoning has been applied to suits removed pursuant to § 1442(a)(2)**") (emph. added).[14]

Congress' intent that federal courts retain jurisdiction over actions arising under Section 1442 is reflected in the fact that, **"[w]hen a party seeks to remove a case under 28 U.S.C. § 1442, removal is favored in the interest of public policy."** *Albrecht v. A.O. Smith Water Prods.*, 2011 U.S. Dist. LEXIS 147730, at \*5 (S.D.N.Y. Dec. 16, 2011) citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (emph. added).

The pertinent part of Section 1442(a)(2) is quoted below:

**(a)** A civil action . . . commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

**(2)** A property holder whose title is derived from any such officer [of the United States or of any agency thereof], where such action or prosecution affects the validity of any law of the United States.

28 U.S.C. § 1442.

As will be demonstrated below, the terms of §1442(a)(2) literally apply here. That alone is sufficient to demonstrate error by the district court, and to reverse the

---

[14] Indeed, while §1442 has been part of the federal laws for almost 200 years, Congress still considers it to be an important tool for protecting national interests, including those of federally-derived property holders. The statute was amended as recently as 2011, demonstrating that Congress is well aware that this statute exists, and believes it should continue to apply.

finding of no federal jurisdiction.  But it is worth noting that the fact that §1442(a)(2) applies here is no accident.  Both the history and intent behind §1442, first enacted in 1833, demonstrates that applying §1442(a)(2) to this case is consistent with the very purpose the statute was created 182 years ago. *See Mesa v. California*, 489 U.S. 121, 125-26 (1989); *Willingham v. Morgan*, 395 U.S. 402, 405-07 (1969).

At the time of the enactment of the direct predecessor to present-day §1442(a)(2), South Carolina was dissatisfied with property rights granted by the federal government to certain individuals.  As a result, South Carolina permitted and pursued state lawsuits in state court asserting claims that would interfere with those federally-derived property rights. *Id.* Congress passed the predecessor of §1442 to provide that such attempts to interfere with federal property rights could be removed to be heard in federal court. *See id*.

It is both interesting, and telling, for this Court to see that those same principles apply in this case today.  Here, MPHJ is the owner of property derived from a U.S. officer under the authority of Congress, a U.S. Patent issued by the Commissioner of the U.S. Patent & Trademark Office. Vermont has decided it dislikes these property rights, and dislikes efforts by the property owner to address trespass on those rights by Vermont businesses.[15]  To that end, Vermont passed,

---

[15] This is no idle speculation. The State, and its Attorney General, have been explicit in insisting that the purpose of this suit, and the passage of the BFAPIA,

and seeks by this suit to enforce, a law that bars the owner of that federally-derived property from protecting the property on terms permitted by the Constitution and federal laws. As a consequence, removing the case to federal court under §1442 wholly comports with the intention of Congress in enacting §1442(a)(2). Thus, the fact that the terms of the statute apply here is not mere coincidence, but indeed the very point of Congress' intention in enacting the law – to make sure that state interference with federally-derived property rights has jurisdiction in the federal courts. The Congressional intent to have a nationally uniform patent law is also, of course, furthered by reading §1442(a)(2) in this manner.

It is also worth noting that the federal courts have acknowledged that because §1442 is an express declaration by Congress that certain types of federal matters should be heard by federal courts as a matter of policy, the general rule that removals are construed against the remover is reversed in §1442 matters. Instead, §1442 is to be broadly construed in favor of a federal forum. *See In re Commonwealth's Motion,* 2013 U.S. Dist. LEXIS 119950, at *12 (E.D. Pa. Aug. 22, 2013) ("Although the general removal statute, 28 U.S.C. § 1441, is to be strictly construed in favor of state court adjudication, the federal officer removal statute, 28 U.S.C. § 1442 . . . should be broadly construed in favor of a federal

---

was to impose restrictions on patent owners not present in current federal law, and more particularly not imposed by the law of this Circuit. A388.

forum") (citation omitted).[16]

In its opinion, the district court plainly did not follow the law to construe §1442 broadly, and indeed expressed skepticism that §1442(a)(2) applied to patent owners. A15-A17. But, ultimately, his decision was based on the more narrow conclusion that §1442(a)(2) was not satisfied because the BFAPIA was not part of the State's Amended Complaint, and thus its enforcement would not satisfy the "affect the validity of any U.S. law" requirement of that section. *Id.* In the following, MPHJ first addresses for completeness each of the elements of §1442(a)(2) not addressed by the district court and demonstrates they are satisfied here. MPHJ then turns to the specific element– "affect a validity of a U.S. law" – which the district court concluded was not satisfied, and shows instead that the BFAPIA plainly is part of the State's Amended Complaint, and that the Complaint, as amended, certainly challenges the validity of U.S. laws.

### A.    The Elements Of §1442(a)(2) Not Relied Upon By The District Court Are Plainly Satisfied

Each of the terms of 28 U.S.C § 1442 are addressed below, and shown to be meet by this case.

---

[16] *See also In re Commonwealth's Request for Relief Against or Directed to Defender Ass'n of Pa.,* 2013 U.S. Dist. LEXIS 116139, at *11 (M.D. Pa. Aug. 16, 2013) (§1442 "is to be broadly construed in favor of a federal forum"); *Houser v. Ammco Tools*, 2013 U.S. Dist. LEXIS 93336, at *8 (D. Md. July 2, 2013) ("courts are to interpret the federal officer removal statute broadly") citing *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Sun Buick v. Saab Cars USA*, 26 F.3d 1259, 1262 (3d Cir. 1994) (same).

### 1. MPHJ Is A Property Holder Under §1442, Which Is Not Limited To Real Property

MPHJ, as a patent owner, is the holder of property covered by §1442(a)(2). The district court expressed skepticism that patents were "property" within the meaning of the statute. A15-A17.  But, as this Court well knows, patents clearly are "property" within the meaning of the federal laws. *See, e.g*., 35 U.S.C. § 261 ("patents shall have the attributes of personal property"). *See also Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999) ("Patents . . . have long been considered a species of property."); *Consolidated Fruit-Jar Co. v. Wright*, 94 U.S. 92, 96 (1877) ("A patent for an invention is as much property as a patent for land.").

The district court incorrectly suggested that the "property" referred to in §1442 was limited to "real property." A16.  But it is clear, however, from a review of the U.S. Code that the specific term "real property" is used by Congress when it intends to limit the reference in a statute of property to only "real property."  In contrast, at several places in the U.S. Code, Congress specifically distinguishes between real property and personal property. *See, e.g.,* 42 U.S.C. § 1982 (equal rights to hold and convey "real and personal property").  As a result, if Congress intended §1442(a)(2) to be limited to only "real property," it would have, and could have said so.[17]  The plain meaning doctrine certainly requires reading

---

[17] In fact, the statute itself provides several definitions for terms used in the statute. *See* 28 U.S.C. § 1442(d). Clearly if Congress intended for the term "property" to

30

§1442(a)(2) to relate to personal property such as U.S. patents. Indeed, this Court's own precedent is consistent with the conclusion that where the statute does not include the term "real" in front of "property" it must be assumed that Congress did not intend to limit the statute to real property. *See, e.g., Pete v. United States,* 215 Ct. Cl. 377, 381 (Ct. Cl.1978).

The district court cited one case, *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 535 (E.D. La. 2011), as a basis for concluding that §1442(a)(2) is limited to "real property." A16. However, in that case, the party asserting rights under §1442(a)(2) had only "contract rights." Thus, the Louisiana court was really faced with the decision of whether the term "property" could include "contract rights." It found that it could not. However, in noting that the term "property" was limited to "real property," the court went further than was necessary to reach its result, and the additional comment constitutes *dicta*. *See St. Bernard,* 809 F. Supp. 2d at 534-35. In any event, the court did not have before it the question of whether patents constituted "property" within the meaning of the statute, and the issue was not considered by the court. In short, the case cannot support reading the statute differently than its plain meaning.

In contrast, a number of courts have agreed that §1442(a)(2) is not limited to real property, though in these particular cases they found other requirements for

be specially defined to apply to "real property," it would have provided for such a definition in that section.

removal not met. *See, e.g., Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 2014 U.S. App. LEXIS 8449, at *10-11 (2d Cir. May 6, 2014) (title to financial Surplus Distributions); *Ute Indian Tribe of the Uintah & Ouray Reservation v. Ute Distrib. Corp.*, 455 Fed. Appx. 856, 858 & 862 (10th Cir. 2012) (title to assets within the tribe, including oil, gas, mineral, hunting and fishing rights); *Crow v. Wyoming Timber Products Co.*, 424 F.2d 93, 96 (10th Cir. 1970) (replevied personal property (timber)).

In sum, the statute simply uses the term "property," and patents are plainly "property" within the meaning of the federal laws.

### 2.    MPHJ's Patents Are Derived From A Federal Officer

The district court commented on the State's position that the "derived from a federal officer" element of §1442(a)(2) is not met here, but did not decide the case on that basis. A15-A16. The State claimed that MPHJ's property is not derived from a U.S. officer, but rather, from the previous owner of its patents, Project Paperless, LLC. A2421.  However, there can be no reasonable dispute that U.S. patents are property derived from a U.S. officer. Under 35 U.S.C. § 2, the Commissioner of the U.S. Patent and Trademark Office has authority to issue patents.[18]  Under 35 U.S.C. § 261, patents have the attributes of personal property,

---

[18] Additionally, the Commissioner serves under the Secretary of Commerce, and acts with his authority. *See* 35 U.S.C. §§ 1(a), 2 & 3. Thus, the Secretary of Commerce could also be considered the "U.S. officer" from whom title to a U.S. patent is derived. The U.S. Patent & Trademark Office has been considered a federal agency and its employees and agents are considered officers of the United

the rights to which may be assigned and recorded.

The State's argument actually appears to be that because MPHJ was not the original assignee, the provisions of §1442(a)(2) do not apply to it. But the State's position contradicts the plain meaning of the term "derived." The term "derived" is understood to include the "origin" of something. *See Bell Communs. Research, Inc. v. Fore Sys.*, 62 Fed. Appx. 951, 959 (Fed. Cir. 2003) ("'Derive' is best defined here as 'to have or take origin: ORIGINATE: STEM, EMANATE'") citing Webster's Third New International Dictionary 608 (1993). Black's Law Dictionary defines "derived" as "[r]eceived from [a] specified source or origin." Black's Law Dictionary 444 (6th ed. 1990). These formal sources, as well as common understanding, make clear that the term "derived from" at least includes being received from the "origin." Here that would be the Commissioner of the Patent Office.

Additionally, in this context, it would not make sense to use any other meaning. Doing so would negate Congress' purpose in enacting §1442(a)(2). As explained above, that purpose was to protect owners of federally-derived property from being subject to suits in state court in states hostile to those property rights. Congress' intent would be clearly thwarted if the original owner could not sell the property to a purchaser without depriving the purchaser of the protection of that

---

States in the context of §1442. *See Roth v. Roth,* 1980 U.S. Dist. LEXIS 16694, at *1-2 (N.D. Ohio 1980).

property intended by Congress. *See, e.g., Willingham*, 395 U.S. at 405. If Congress had intended the protection of §1442 to be limited to the "original property holder" rather than any "property holder," it easily could have done so. Such a reading would also conflict with 35 U.S.C. § 261, which provides that "any interest" in a patent is assignable, and plainly one such interest is the Congressional protection afforded by §1442(a)(2).

Here it is obvious that title to MPHJ's Patents did not originate from the previous owner of the patents, as Project Paperless LLC did not, and could not, create the title for U.S. patents. Only the Commissioner could do that, as explained above. *See* 35 U.S.C. § 2.

### 3. This Is An Action Directed At MPHJ As The Property Holder

The district court did not address this element of §1442(a)(2), that the action was directed at MPHJ as the property holder. Below, the State contended that §1442 is inapplicable because its claims supposedly are not "against or directed to" MPHJ's ownership of the patents or the validity of the patents. A2421. But these arguments simply misread the statute. Section 1442(a)(2) requires only that the civil action be "against or directed to … **a property holder** whose title is derived from [a federal] officer . . ." 28 U.S.C. §1442 (a)(2) (emph. added). Thus, it applies where, as here, the action is "against or directed" to the property holder, MPHJ, not the property holder's property.

34

**B.     The District Court's Conclusion That § 1442(a)(2) Did Not Apply Because The State's Attempt To Compel Compliance With The BFAPIA Does Not Affect The Validity Of Laws Of The U.S. Was Error As A Matter Of Law And Clearly Erroneous**

While the district court expressed skepticism as to whether other elements of §1442(a)(2) were met, ultimately, the court based its decision that the statute did not apply on the grounds that the State's suit did not "affect the validity of any laws of the United States." A17.  The district court's sole conclusion in this regard was based upon its mistaken finding that the State's Amended Complaint did not seek relief under the BFAPIA. *Id.* As explained below, this conclusion was plain error.  The State's Amended Complaint clearly seeks to compel MPHJ's compliance with applicable state law, of which the BFAPIA is certainly part of. The district court's conclusion otherwise is clear error, as MPHJ demonstrates below.

Because the district court concluded the BFAPIA was not part of the Amended Complaint, it did not address the separate question of whether the State's effort to compel compliance with the BFAPIA would affect the validity of a U.S. law.  MPHJ demonstrates first here that the State's suit to compel a patent owner's compliance with the BFAPIA clearly affects the validity of numerous federal laws as that term has been construed in the context of §1442.  It then turns to the district court's error in finding that the Amended Complaint did not seek to compel compliance with the BFAPIA.

35

### 1.    The BFAPIA Affects The Validity Of U.S. Laws

The last requirement of §1442(a)(2) is that the removed state action must "affects the validity of any law of the United States."  While the phrasing is a bit unusual, it is settled that §1442(a)(2) is not limited to cases that seek explicit declarations that a federal law is invalid.  Instead, courts have held that this language requires only that the plaintiff's suit would "affect" the validity of a U.S. law. 28 U.S.C. § 1442(a)(2). *See, e.g., Benitez Bithorn v. Rosello-Gonzalez*, 2002 U.S. Dist. LEXIS 15614, at *28 (D.P.R. 2002) (finding §1442(a)(2) applicable even though "plaintiffs' claims do not use specific words which challenge the validity of any federal law").  In turn, an action will be held to "affect the validity" of a U.S. law if success in the suit would frustrate interests established by the pertinent U.S. law. *See Town of Davis v. West Virginia Power & Trans. Co.*, 647 F. Supp. 2d 622, 627 (N.D. W.Va. 2007).  An action also can "affect the validity of a U.S. law" if the result the plaintiff seeks would be inconsistent with an action required of a defendant by federal law. *See, e.g., Veneruso v. Mount Vernon Neighborhood Health Ctr.,* 933 F. Supp. 2d 613, 632 (S.D.N.Y. 2013).

The State's First Amended Complaint – which seeks to compel by injunction (a violation of which would be contempt) MPHJ's compliance with the BFAPIA[19]

---

[19] The State's contention that the extent to which its suit affects the validity of U.S. laws can be addressed by tailoring any injunction is unavailing. A2421-A2422. The State has sought an injunction compelling compliance with the BFAPIA. It cannot now disavow that its suit seeks this relief. And a state court plainly cannot rewrite the Act.

– affects the validity of 35 U.S.C. §§ 261, 271, 284, 285 & 287, as well as certain

parts of the U.S. Constitution. A27. Those laws establish specific interests in

federally-derived property – patents – that would be frustrated by an injunction

compelling compliance with the new Act, and thus the suit comes within the scope

of §1442(a)(2). *See, e.g., Town of Davis*, 647 F. Supp. 2d at 627 (if interests

provided for by federal regulation would be frustrated by plaintiff's success,

§1442(a)(2)'s "affects the validity" requirement is met). *See also Benitez Bithorn*,

2002 U.S. Dist. LEXIS 15614 at *31 (suit "clearly affects the validity of said

federal law" where "a positive outcome for plaintiffs may question its validity").

Specifically, the Act undoubtedly affects the validity of several federal laws

in that it is invalid or preempted on its face under the First and Fourteenth

Amendments, Title 35 of the U.S. Code, the Supremacy Clause of the U.S.

Constitution and the Dormant Commerce Clause. A26-A27. As one example, the

BFAPIA permits a violation of the Act to be found, and penalties and injunctive

relief imposed, without requiring proof of objective and subjective baselessness, in

violation of the First and Fourteenth Amendments. 9 V.S.A. § 4197. *See, e.g*,

*Globetrotter*, 362 F.3d at 1374-76.

Another example is that the Act (§ 4197) expressly discriminates among

different classes of patent owners in a manner not recognized or permitted under

Title 35 of the U.S. Code, inclusive of 35 U.S.C. § 261, and under the First and

Fourteenth Amendments of the U.S. Constitution, by expressly favoring patent

owners who have made investment in use of the patent or who are the inventor, or a university (§ 4197(c)(4 & 5)).

An additional example is that the Act (§ 4197) requires inclusion of information, such as analysis of a target's products, that may not be possible, such as in the situation with infringers of MPHJ's patents under *Judin*, and thereby impairs the ability to enforce patents held by some U.S. patent owners in a manner that interferes with the U.S. patent law.  In addition, the injunction requested by the State also would frustrate a patent owner's rights under the First Amendment as defined by *Globetrotter*, which also brings the suit within the scope of §1442(a)(2).  These are just a few examples of how the BFAPIA affects the validity of several U.S. laws. *See also* A2480-A2481.

For at least these reasons, the BFAPIA clearly affects the validity of several federal laws.  On this basis the State's suit also comes within the scope of the "affects the validity of U.S. laws" requirement of §1442(a)(2). *See, e.g., Veneruso,* 933 F. Supp. 2d at 632.[20]  In sum, it is not reasonably disputable that compelling a

---

[20] Contrary to the State's assertions, these ways in which the State's suit would frustrate or impair interests established by U.S. laws are not presented as "defenses," but as consequences that would ensue were the State to succeed. A2421-A2422.  As such, they are examples of how the State's suit would "affect the validity" of U.S. laws under §1442(a)(2).  But even if some of these points may also relate to defenses, this is no bar to application of §1442(a)(2).  Courts have held that §1442, inclusive of all its subparts (including (a)(2)), permit defenses to provide a basis for federal jurisdiction. *See Benitez Bithorn,* 2002 U.S. Dist. LEXIS 15614 at *30-31 (holding *Alabama v. Acker,* 527 U.S. 423, 430 (1999) applies equally to all parts of §1442 and provides that for any of them, that "despite the

U.S. patent owner to comply with the BFAPIA would affect the validity of numerous U.S. laws, as well as the U.S. Constitution.

### 2.    The BFAPIA Is Implicated In The State's Amended Complaint

As noted, the district court did not address whether this suit, by seeking an injunction to compel compliance with the BFAPIA, would "affect the validity of a law of the United States." And as demonstrated in the preceding section, it is beyond peradventure that a suit such as presented by the Amended Complaint will do so. However, the district court remarkably concluded that the suit, as presented by the State's First Amended Complaint, does not seek to compel compliance with that Act (and, therefore, the BFAPIA is not part of the State's suit). A15-A17. This holding was in error, and should be reversed by this Court.

The district court based its conclusion on the fact that the Amended Complaint is titled "First Amended Consumer Protection Complaint," and the first sentence of the Amended Complaint states that "[t]he Vermont Attorney General brings this suit under the Vermont Consumer Protection Act." A11-A12. The district court claimed that this language made it clear "that the State is making an explicit effort to limit its claims to the VCPA." A12. But just reading the Amended Complaint demonstrates this is not the case. It ignores the State's

---

nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law"). *See also Town of Davis*, 647 F. Supp. 2d at 627 (same).

request for relief, which plainly seeks to compel MPHJ's compliance with the BFAPIA.

In the Amended Complaint, the State alleges that MPHJ engaged in a number of acts which the State contends violate the VCPA. A857-A858.[21] But the State contends that many of those same acts would also violate the terms of the BFAPIA. *Id.* Indeed the Vermont Attorney General has conceded the BFAPIA was passed directly in response to MPHJ's patent enforcement efforts that are at issue in the State's case. A383-A388.

As explained above, the State amended its complaint to remove its original second request for relief, leaving only its first request for relief in place. That first request for relief seeks an injunction prohibiting MPHJ "from engaging in any business activity in, into or from Vermont that violates Vermont law." A858-A859. In filing the Amended Complaint after the BFAPIA went into effect, it is key that the State left its second request for relief unchanged. *Id.* This lack of change in this request for relief, when other portions of the requests for relief were changed, is significant because, in the time since the original complaint was filed, the BFAPIA became effective. The result was that the effect of the State's amendment now included the BFAPIA as one of the "Vermont law[s]" that the State now seeks to

---

[21] As an important aside, it should be noted that MPHJ strongly disagrees with the State's assertions, and that a separate federal judge has already found that MPHJ's conduct did not violate any state or federal law. *See Activision TV, Inc. & MPHJ Technology Investments, LLC v. Bruning,* slip op. at 4-7 (D. Neb. Sept. 2, 2014).

enjoin MPHJ from violating.

Significantly, if the State instead intended that the VCPA be the only law that MPHJ is enjoined from violating in the future, the State could have (and would have) indicated as such in its amendment. The State, however, did not provide any such limitation or amend its request for relief to prevent MPHJ "from engaging in any business activity in, into or from Vermont that violates the VCPA." Therefore, it simply cannot be reasonably argued that part of the Vermont law to which the State would seek to compel compliance would be the BFAPIA. This is especially true where the wrongful activities engaged in by MPHJ complained of by the State would violate the BFAPIA (as confirmed by the Vermont Attorney General). Thus, contrary to the district court's conclusion, the State's request for relief, when read in context with the State's amended pleading, undoubtedly seeks relief under the BFAPIA.[22]

In sum, §1442(a)(2) applies by its literal terms, and applying it in these circumstances fulfills the very purposes for which Congress enacted the statute 182 years ago, and has amended it as recently as 2011.

---

[22] It is quite clear that the Court is not constrained by either the title of the Amended Complaint, or how the State characterizes it in the opening sentence. *See, e.g., Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915 (7th Cir. 2001) (under the artful-pleading doctrine, a court is permitted to "look[] past the surface allegations to make its own assessment of what the law the claim arises under"); *Cresswell v. Sullivan & Cromwell*, 771 F. Supp. 580, 583 (S.D.N.Y. 1991) (explaining that the Supreme Court has approved "[t]he technique of looking beyond the words of the complaint to discern the true nature of the plaintiffs' claim").

## II.    MPHJ'S REMOVAL IS TIMELY UNDER §1446(B)(3)

The district court separately concluded that even if §1442(a)(2) did apply,

that MPHJ's removal did not satisfy the timing requirements of 28 U.S.C.

§1446(b)(3).

> Section 1446(b)(3) provides in pertinent part that:
>
> **(a) Generally.—** A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States . . . a notice of removal . . ..
>
> **(b) (3)** . . .if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days **after receipt by the defendant** … **of an amended pleading…or other paper** from which **it may first be ascertained that the case is one which is or has become removable**.

28 U.S.C. §1446(b)(3) (emph. added).

The parties agree that portions of the requirements of 28 U.S.C. §1446(b)(3)

are met, and the district court did not disagree. There is no dispute that the initial

pleading was found not to be removable, and that the First Amended Complaint is

an "amended pleading."  The only dispute over §1446(b)(3) is whether the

Amended Complaint is the first pleading <u>received</u> by MPHJ from which it could

first be <u>ascertained</u>[23] that the State now seeks an affirmative injunction requiring

MPHJ's compliance with the BFAPIA (thus making it removable under

§1442(a)(2)), and <u>when</u> MPHJ should be deemed to have "received" that pleading .

---

[23] An emphasis on the "ascertained" language must be acknowledged, as the standard is not simply when MPHJ could first determine its basis for removal, but when it could ascertain, meaning it was undoubtedly clear, that the Amended Complaint provided a basis for removal.

As addressed above, the district court erroneously held that Amended Complaint did not seek to compel MPHJ's compliance with the BFAPIA.  But, the court alternatively ruled that even if the Amended Complaint did seek that relief, that MPHJ's removal was untimely.

The court's opinion addressed three possible dates from which MPHJ's removal obligation could be triggered.  The first was the one relied upon by MPHJ, the date the state court granted the State's Motion for Leave to File an Amended Complaint, which was August 28, 2014 (in which case MPHJ's subsequent removal on September 9 was clearly timely). The second, advocated by the State, is the date it sought to bypass its pending Motion for Leave and simply to file an Amended Complaint in state court, which was on May 7, 2014.  The third, relied upon by the court, did not relate to any paper received by MPHJ, as would be required by §1446(b)(3).  Instead, the court relied upon a statement in MPHJ's briefing on September 18, 2013 on the first removal of the original complaint, from which it can be seen that MPHJ was aware that the BFAPIA had been enacted (but not that MPHJ understood the new Act to be relevant to the original complaint).

The error in the court's reliance on the September 18, 2013 date is multifold: (1) it did not involve a receipt by MPHJ of any paper as required by §1446(b)(3); (2) the actual statement in the briefing makes it clear that MPHJ, like the State and the district court, did not believe enactment of the BFAPIA made the original complaint removable, and thus plainly could not suffice as a paper from which

43

MPHJ could "ascertain" that removal on that basis was available; (3) it relied on a premise that passage of a law giving rise to a right of removal can be a triggering date, which is not the law under §1446(b)(3); and (4) even if the Act were somehow applicable to the original complaint, MPHJ could not, and certainly would not have ascertained that it could, remove the original complaint on that basis as by September 18, jurisdiction of the case rested in the federal court, and there was nothing to remove, and in any event MPHJ was past the date by which a notice of removal may be amended.

For the district court's timeliness decision to be correct, the original complaint needed to be removable on the basis of the BFAPIA, that fact had to be reasonably ascertainable by MPHJ, and MPHJ would have had to receive a paper making that ascertainable. None of these conditions are satisfied here, as MPHJ demonstrates below.  MPHJ then demonstrates that as to the Amended Complaint, which does invoke the BFAPIA, and is removable under §1442(a)(2), the date of MPHJ's "receipt" of that Amended Complaint as that term is defined for purposes of §1446(b)(3) is the date the state court granted the State's Motion for Leave, not the date the State prematurely filed the Amended Complaint while its Motion for Leave was still pending.

### A. MPHJ Did Not, And Could Not, Have Ascertained A Right To Remove Pursuant To § 1442 On The Basis Of The BFAPIA As Of The September 18, 2013 Date Relied Upon By The District Court

The State's original complaint was filed in state court on May 8, 2013.

44

A2763. MPHJ timely filed its original notice of removal on June 7, 2013. A2729.
The BFAPIA, upon which MPHJ based its second notice of removal (because it
affects the validity of U.S. laws pursuant to §1442), did not become enacted into
law until July 1, 2013. 9 V.S.A. § 4197. Thus, as explained, the relief sought by the
State in its original complaint – a permanent injunction requiring MPHJ to comply
with Vermont law – could not have included the BFAPIA. The State and the
district court agree with this conclusion. For this reason, MPHJ's original notice of
removal could not have relied upon any basis involving the BFAPIA. Therefore,
the original complaint was not a pleading received by MPHJ from which it could
first be ascertained that MPHJ could remove on the basis of §1442 and the
BFAPIA.

Despite concluding that the BFAPIA was not part of the State's original
complaint, the district court, however, nevertheless concluded that MPHJ could
have cited the BFAPIA "as a ground for removal initially." A12. The district court
supported this erroneous conclusion with two observations: (1) since the BFAPIA
was enacted into law prior to MPHJ's response to the State's initial Motion to
Remand, MPHJ could have presumably amended its original notice of removal to
assert the BFAPIA as a basis; and (2) MPHJ filed its Opposition to the State's
initial Motion to Remand on September 18, 2013, and within that document, MPHJ
referenced the existence of the BFAPIA (so it could have asserted it as a basis for
removal then). A12-A17. The error in each of these conclusions is explained

45

below.

### 1.     The Enactment Of The BFAPIA Could Not Trigger MPHJ's Ascertainment Of Its Right To Remove

In its opinion, the district court acknowledged that "[t]his case is unique in that the fact giving rise to removal was not disclosed by a party through pleadings or discovery, but instead was the public passage of a law." A14.  The district court noted that the "BFAPIA was enacted into law prior to this Court's initial remand, and indeed, prior to MPHJ's response to the State's initial motion to remand," presumably implying that MPHJ could have asserted it as a basis for removal after the law became effective on July 1, 2013. A12.  However, in reaching this conclusion the court was in error.  Even if the original complaint had invoked the BFAPIA (which it did not), and more importantly even if MPHJ could have ascertained that the BFAPIA was somehow involved, the law is clear that the passage of a law **is not** sufficient to give a party knowledge of a right to remove.[24] Thus, July 1, 2103, the date upon which the BFAPIA was enacted, cannot be the date upon which MPHJ first ascertained its right to remove to start the 30 day

---

[24] *See, e.g., Phillips v. Allstate Ins. Co.,* 702 F. Supp. 1466, 1468 (C.D. Cal. 1989) ("virtually every court which has considered the question of what suffices as a removal triggering 'paper' has concluded that the term does not include intervening statutory or case law changes"); *Webb Equip. Co. v. Auto Owners Ins. Co.,* 2010 U.S. Dist. LEXIS 49705, at *8-9 (W.D. Wash. Apr. 20, 2010) (citing cases); *Haddad v. Virginia Polytechnic Inst. & State Univ.,* 1999 U.S. App. LEXIS 2209, at *5 (4th Cir. Feb. 12, 1999) (same); ARTICLE: REMOVAL AND REMAND: A GUIDE TO NAVIGATING BETWEEN THE STATE AND FEDERAL COURTS, 23 Miss. C. L. Rev. 97, 119 (2004) ("changes in the law…do not trigger the removal time delay").

clock (or any right to amend its notice of removal to include §1442 and the

BFAPIA).

> **2.    The Reference To The BFAPIA In MPHJ's September 18, 2013 Filing Demonstrates That It Did Not Ascertain The BFAPIA As A Basis For Removal , Which Is Reasonable As Both The State And The District Court Agree The Original Complaint Did Not Invoke The BFAPIA**

Perhaps recognizing that the passage of the BFAPIA was insufficient to put

MPHJ on notice of the Act, the district court discussed, but did not actually rely

upon the enactment of the Act as the triggering date. Instead, the court asserted that

"MPHJ's citation to the BFAPIA in September 2013 revealed its actual knowledge

of the statute, and the Court need not engage in any additional inquiry to determine

when the time period for removal commenced." A14. Thus, the district court based

its conclusion of untimeliness on the view that even if the original complaint did

not provide bases for removal related to the BFAPIA until after that Act became

effective on July 1, 2013, that MPHJ did later become aware of the Act, and that

this subjective awareness could separately trigger the §1446(b)(3) clock.  But this

conclusion is wrong on several points.  First, the statement relied upon by MPHJ

makes it clear that MPHJ did not believe the original complaint invoked the

BFAPIA (which is certainly reasonable, as both State and the district court agree

with this conclusion).  Second, even if one assumed, *arguendo*, the original

complaint had been removable on that basis, MPHJ's mention of the statute itself

in a brief on remand on other grounds, simply is not "receipt" by MPHJ of any

paper from which removal may be ascertained, as required by §1446(b)(3).

**(a)    MPHJ's Footnote In Its September 18, 2013 Filing Demonstrates That It Did Not Ascertain The BFAPIA Was Part Of The State's Original Complaint**

The district court relied upon MPHJ's citation to the BFAPIA in its September 18, 2013 Opposition to the State's original motion to remand to conclude that MPHJ ascertained a basis for removal.  But that statement actually demonstrates the very opposite of the conclusion postulated now by the district court.  MPHJ's statement shows instead that it, like the district court and the State, MPHJ did not ascertain that the original complaint sought to enforce the BFAPIA. In that filing, the entirety of MPHJ's reference to the BFAPIA is this:

> The Complaint represents **one prong** of Vermont's attempt to attack the type of patent owner which the State refers to as "patent trolls." **The other** is the State's enactment of an "anti-troll" bill the same day this suit was served. **Both efforts, this Suit and the new Bill**, were orchestrated by multiple companies in Vermont that appear to be repeat patent infringers.

A2855 (emph. added). The Court can see that while MPHJ's briefing recognized that the BFAPIA existed, the cited passage above makes it clear that MPHJ **did not** believe that the original complaint incorporated the new law, as MPHJ explained there that "this Suit **and** the new Bill" are Vermont's efforts to combat trolls. The State and the district court agreed with this conclusion, that the original complaint did not include the BFAPIA.  It is thus clear that nothing in MPHJ's statement could suffice as evidence that MPHJ had ascertained that the original complaint sought to enforce the BFAPIA and as such presented a basis of removal.[25]

---

[25] In any event, MPHJ could not have amended its original notice of removal on or after September 18, 2013 to assert the BFAPIA as a ground for removal. This is

### (b)    MPHJ's Statement On September 18, 2013 Would Also Not Qualify As Receipt Of A Paper Under §1446(b)(3)

Even if MPHJ's statement in the September 18 briefing somehow was relevant to §1446(b)(3), it would still not constitute the "receipt" of a paper by MPHJ that would trigger the section.  The well-settled majority view of §1446(b)(3) is that the triggering event for measuring timeliness is not the date by which a defendant became subjectively aware of a possible basis for removal. Instead, the courts have said that the better and more reasonably enforced standard is to require the receipt of a document from which the defense can be ascertained. Courts have considered this objective standard to be more fair to the removing party, and to be good public policy in that it helps courts make reliable decisions that do not require delving into the defendant's subjective state of mind. *See, e.g., Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 206 (2d Cir. 2001) citing *Foster v. Mut. Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 53-54 (3d Cir. 1993) ("relevant test is not what the defendants purportedly knew, but what these documents said"); *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992) (adopting same test); *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997).

---

because the thirty days in which MPHJ could have amended its June 7, 2013 notice of removal had long expired (over 2 months prior to be exact). *See, e.g., CBS, Inc. v. Snyder,* 762 F. Supp. 71, 73 (S.D.N.Y. 1991) (explaining that an amended notice of removal asserting a new ground for removal must be filed within the 30-day time limit of 28 U.S.C. §1446(b)). Further, since the case was already removed in September 2013, contrary to the district court's assertions, MPHJ could not have filed a new notice of removal incorporating the BFAPIA.

The district court cited *Andrews v. Daughtry,* 994 F. Supp. 2d 728 (M.D.N.C. 2014) and *Univ. of Ky. Research Found., Inc. v. Niadyne, Inc.,* 2013 WL 5943921 (E.D. Ky. Nov. 5, 2013) to conclude that "the exchange of documents in the course of litigation may evidence a party's knowledge of the grounds for removal, and that timeliness can be determined on the basis of such evidence." A13. But those cases are distinguishable and the documents cited there demonstrate the defendant's ascertainment of a right to remove.[26,27] Here, even though MPHJ cited the BFAPIA in its September 18 filing, and even if MPHJ's own filing on September 18 could constitute "receipt" of a document (which is not the law), it is clear that MPHJ <u>did not</u> ascertain it as a basis for removal at that time.

---

[26] In *Daughtry*, counsel had made statements at oral argument and in other filings that demonstrated he knew he claimed ownership in the songs, and had received a remand which expressly acknowledged the ownership claim. In contrast, here there were no documents exchanged (and no oral argument by MPHJ's counsel), that MPHJ was aware that the State sought relief under the BFAPIA until the Amended Complaint became effective.

[27] *Niadyne* is distinguishable in that it does not follow the majority rule which applies an "objective standard" for timeliness under §1446(b). *Niadyne*, 2013 U.S. Dist. LEXIS 158018 at *25. As explained above, it is the majority rule that should be followed here. Separately, it is clear that unlike the situation in *Niadyne*, MPHJ did not have "solid and unambiguous information" that it could assert a claim under the Act until the state court granted the State leave to file its amended complaint. *See id.*

**B.**    **MPHJ's Time For Removal Under §1446(b)(3) Began When It "Received" The Amended Complaint Within The Meaning Of That Section, Which Was When The State's Motion For Leave To File The Amended Complaint Was Granted**

In sum, as explained above, there is no basis to conclude that MPHJ received any document, and/or could have ascertained that the original complaint was removable on the basis that it invoked the BFAPIA, when MPHJ did not receive any such paper, made no statement from which one could conclude that MPHJ even believed the BFAPIA was relevant to the original complaint, and the State and the district court both insisted the BFAPIA is not relevant to the original complaint.  Instead, the only paper received by MPHJ from which it could be determined that the Amended Complaint is removable under §1442(a)(2) on the basis of the BFAPIA, is the Amended Complaint itself.  MPHJ has explained this point above. Thus, the only remaining issue is when MPHJ may be said to have "received" the Amended Complaint within the meaning of §1446(b)(3).

While the case was still pending in the district court, the State filed a Motion for Leave to Amend its Complaint (on March 7, 2014). A4100-A4105. The district court remanded the case on April 15, 2014 without ruling on the motion for leave – leaving it pending in state court. A2704.  Without waiting for the state court to decide its Motion for Leave, the State, on May 7, 2014, filed its Amended Complaint in state court. A850-A859.  However, the state court did not grant the State's Motion for Leave until August 28, 2014. A1137.  MPHJ removed the case within 30 days of that date. A24-A29.  Because the §1446(b)(3) "clock" starts

51

when MPHJ "received" the Amended Complaint, the remaining issue is <u>when</u>

MPHJ is considered under law to have "received" the pleading – when the State

filed its Amended Complaint in state court, or instead when the state court granted

the State's pending Motion for Leave to Amend its Complaint.

The majority view, and the better and more logical view, is that where a

motion is made for leave to file an amended pleading, that amended pleading

should be considered "received" in the sense of being a "triggering event" under

§1446(b)(3), when the state court <u>grants leave for it to be filed</u>. *See, e.g., Freeman*

*v. Blue Ridge Paper Prods., Inc*. 551 F.3d 405, 409-10 (6th Cir. 2008) (concluding

the "better view . . . is that the time limit [to remove] begins to run from the actual

and effective amendment of the complaint") (citing cases); *Sullivan v. Conway*,

157 F.3d 1092, 1094 (7th Cir. 1998) ("Until the state judge granted the motion to

amend . . . the complaint did not state a federal claim. It might never state a claim,

since the state judge might deny the motion."); *McDonough v. UGL Unicco*, 766 F.

Supp. 2d 544, 546 (E.D. Pa. 2011) (same) (citing numerous cases for this

proposition).  Any other policy would create judicial inefficiency, in that it would

require defendants to remove a case on the basis of an amended complaint when it

is not even clear that the state court will permit the complaint to be amended.[28]

---

[28] Plainly, if MPHJ had removed within 30 days of the State's filing of its
Amended Complaint in state court without leave, the State would undoubtedly be
asserting instead that MPHJ's notice of removal was premature because its
Amended Complaint was not yet effective.

*Concordia Partners, LLC v. Pick,* 2014 U.S. Dist. LEXIS 112571, at \*5-6 (D. Me. Aug. 14, 2014) (in a § 1454 case, rejecting the argument that the removal clock begins to run when the plaintiff files motion for leave to amend because, "removal before the state court actually amends the complaint may have the anomalous effect that the removed case lacks federal jurisdiction at the time it is removed").

The State argues this rule – that the clock starts when leave to file is granted, rather than when the motion for leave is filed – should be ignored here because after remand it separately filed the First Amended Complaint in state court, where the State argues it did not need to seek leave. But the State never withdrew its Motion for Leave, and indeed the State made it clear to the district court that the Motion would be considered by the state court if the court remanded with the Motion undecided.[29] A4104. In taking this position, the State specifically cited to *Wolst v. Am. Airlines*, 668 F. Supp. 1117, 1120 n.6 (N.D. Ill. 1987) (deciding to "send the case back subject to the pending motion, which should be dealt with by the state court"). *Id.* The district court ultimately did exactly what the State requested – it remanded the Motion for leave to amend without ruling on it, so that the state court could rule on it. *See* A2704; A2722 ("because the Court lacks subject matter jurisdiction, it will not grant the motion to amend, **but instead allow**

---

[29] Tellingly, the State also did not move for default judgment against MPHJ for failing to answer what the State purportedly believed was an "effective" Amended Complaint as of May 7, 2014. Clearly if the State believed its Amended Complaint was effective at that time, it would have protested when MPHJ did not Answer the State's Amended Complaint until September 9, 2014.

**the motion to proceed in state court**") (emph. added).[30]  Indeed, if the State were correct that it no longer needed leave, the state court would have dismissed the State's motion for leave to file as moot, rather than granting it.  By granting it, the state court plainly made the State's Amended Complaint effective as of the date leave was granted. A1137.

It is clear that in the proceedings below, both MPHJ and the state court understood that leave to file was required.  The State's argument rests in part on the contention that it could amend as of right in state court.  But the State fails to recognize that by seeking leave to amend, and agreeing such request could be decided by the state court on remand, it waived any ability it may have had to amend as of right.[31]  Having waived the right to amend without leave, it is clear the time for removal began only when leave to file the amended pleading was granted. *See Douklias v. Teacher's Ins. & Annuity Ass'n,* 35 F. Supp. 2d 612 (W.D. Tenn.1998).

---

[30] The State admits its motion was pending in state court. A2410 ("the Court remanded all pending motions to state court . . . [including] the State's conditional motion to clarify and/or amend the complaint"); A2411 ("The [state] court noted the State's pending motion to clarify or amend the complaint (which had been filed in federal court) and granted that motion").

[31] A motion for leave to file an amended pleading waives the ability to amend as of right. *See Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 458 (6th Cir. 2013) (the plaintiff waived his right to argue leave was not required because he "sought leave in the district court instead of simply filing an amended complaint") citing *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010). *See also Guangyu Wang v. Univ. of Nev., Reno,* 2012 U.S. Dist. LEXIS 164039, at *3 (D. Nev. Nov. 15, 2012); *Galloway v. Forum Publishing Co.*, 138 N.W.2d 798, 802 (N.D.1965).

Given these principles, the Amended Complaint did not become effective until the state court granted the State leave to amend on August 28. It is that date on which MPHJ "received" the Amended Complaint within the meaning of §1446(b)(3).  Accordingly, MPHJ's removal, filed on September 9, was within the 30 days permitted by §1446(b)(3).

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, MPHJ respectfully requests this Court reverse the district court's conclusion that it lacked jurisdiction under §1442(a)(2).

Dated: April 6, 2015                    Respectfully submitted,


/s/ *W. Bryan Farney*
W. BRYAN FARNEY
STEVEN R. DANIELS
DAVID PAUL SWENSON
FARNEY DANIELS PC
800 South Austin Avenue, Suite 200
Georgetown, Texas 78626
Telephone: (512) 582-2828
Facsimile: (512) 582-2829
BFarney@farneydaniels.com
SDaniels@farneydaniels.com
DSwenson@farneydaniels.com

*Counsel for Defendant-Appellant*

# ADDENDUM

## <u>TABLE OF CONTENTS</u>

**ORDER APPEALED FROM**

Vermont District Court Remand Decision                    **A1-A23**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STATE OF VERMONT,           :
                           :
    Plaintiff, Counterclaim :
        Defendant,       :
                           :
and                     :
                           :
WILLIAM SORRELL, in his   :
official capacity as Attorney :
General of the State of    :
Vermont,              :
                           :
    Counterclaim Defendant,  :
                           :
        v.            :   Case No. 2:14-cv-192
                           :
MPHJ TECHNOLOGY INVESTMENTS, :
LLC,                  :
                           :
    Defendant/Counterclaim   :
        Plaintiff.      :

**OPINION AND ORDER**

Plaintiff State of Vermont brings this action under the Vermont Consumer Protection Act ("VCPA") against Defendant MPHJ Technology Investments, LLC ("MPHJ").  The State claims that MPHJ, through shell subsidiaries, sent false and misleading letters to various Vermont entities alleging patent infringment and demanding the purchase of licenses.  MPHJ has answered and filed counterclaims for declaratory judgment as to (1) the validity or preemption of the State's statutory causes of action under federal law and (2) the validity and infringement of the MPHJ patents.  The case was initiated in state court, and MPHJ removed to this Court.

A1

This is MPHJ's second removal.  In the first, which did not involve any counterclaims, MPHJ claimed the State's action under the VCPA would impact its patent rights.  The Court concluded the State had not raised any issues of federal law and remanded the case to state court.

The State subsequently amended its pleading, deleting a single phrase from its prayer for relief and adding no new substantive claims.  MPHJ responded with an answer and counterclaims for declaratory relief, asserting that the Amended Complaint necessarily implicates a recently-passed Vermont statute pertaining to assertions of patent infringement, and that the new statute violates federal law.  The State denies that this new statute is a part of its Amended Complaint.  MPHJ's counterclaims also ask for confirmation of its patent rights, and for a finding that the VCPA violates federal law.

Upon MPHJ's second removal, the State has again filed a motion to remand and, in the event the Court chooses not to remand, a motion to dismiss.  Those two motions are now pending before the Court.  For the reasons set forth below, the motion to remand is **granted** and the motion to dismiss is **denied** as moot.

## I.    Factual and Procedural Background

In May 2013, the State filed its original Complaint in this case under the VCPA, Vt. Stat. Ann. tit. 9 §§ 2451 *et seq.*, claiming MPHJ had engaged in unfair and deceptive business

practices in Vermont.  The State alleged that MPHJ, through various shell subsidiary companies, sent letters to businesses and non-profits in Vermont claiming patent infringement.  The letters requested either the purchase of a license, or confirmation that the recipient was not infringing the patents. The letters also represented that the licensing program had received a largely positive response, and that many recipients of such letters had paid for a license.  Follow-up letters were sent from a Texas law firm threatening legal action if the recipient did not respond.  Some Vermont businesses claimed that they only received the follow-up letters and not the original letter.

The State's initial Complaint alleged that these letters were false, deceptive, and misleading in violation of the VCPA because: (1) MPHJ did no due diligence to confirm whether the recipients were likely infringers; (2) MPHJ targeted small businesses in commercial fields unrelated to patent law; (3) MPHJ had not actually received a positive response regarding its licensing program; (4) only a very small fraction of recipient businesses had purchased licenses; (5) as of the time of the Complaint, neither MPHJ nor its shell companies had filed a single lawsuit; (6) as of the time of the letters, MPHJ had not retained local counsel; (7) the shell companies claimed to possess exclusive licenses, but in fact did not; and (8) the shell companies often targeted businesses outside the geographic

regions in which they were legally permitted to enforce the patents.

The initial Complaint requested relief in the form of a permanent injunction prohibiting MPHJ from engaging in further business activity "that violates Vermont law," and "requiring Defendant to stop threatening Vermont businesses with patent-infringement lawsuits." ECF No. 1-1 at 11. The Complaint also sought full restitution for businesses that suffered damages, civil penalties, costs and fees to the State, and any other relief the Court deemed appropriate.

In June 2013, MPHJ removed the case to this Court, asserting federal question and diversity jurisdiction. MPHJ maintained that the Court had federal question jurisdiction because the validity, infringement, and enforcement of the patents referenced in the letters fell within the Court's exclusive jurisdiction. MPHJ also claimed that the State was filing on behalf of Vermont businesses, thereby establishing diversity jurisdiction. The Court disagreed, concluding that "the State's complaint brings claims solely under state law for unfair and deceptive practices and its claims are premised on multiple theories that do not implicate federal patent law." *State v. MPHJ Tech. Inv., LLC*, 2014 WL 1494009, at *6 (D. Vt. Apr. 15, 2014). The Court also found that the State was the true party in interest, and was not a citizen for purposes of diversity jurisdiction. MPHJ appealed

the Court's ruling to the United States Court of Appeals for the Federal Circuit, which dismissed the appeal for lack of jurisdiction under 28 U.S.C. § 1447(d).[1]

The State subsequently amended the Complaint, deleting its request for an injunction barring threatening communications with Vermont businesses.  This was the State's only change to its pleading.  Like the original Complaint, the Amended Complaint continues to request an order enjoining violations of "Vermont law."

On September 9, 2014, MPHJ responded with an answer, counterclaims, and a second notice of removal.  MPHJ's removal notice asserts that the State's request for an injunction against violations of "Vermont law" necessarily implicates the recently-enacted Vermont Bad Faith Assertions of Patent Infringement Act (the "BFAPIA" or "Act"), Vt. Stat. Ann. tit. 9 §§ 4195-99.  That Act was signed by the Governor on May 22, 2013, and took effect on July 1, 2013.  The Act was therefore not in effect when the State filed its initial Complaint on May 8, 2013, but was in effect when the State amended its pleading in 2014.

The BFAPIA targets bad faith patent infringement claims. The Act sets forth a number of factors for a court to consider when determining bad faith, including whether a demand letter

---

[1]  Section 1447(d) of Title 28 states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]"

includes: the patent number; the name and address of the patent owner; specific information about the alleged infringement; a demand for payment of a license fee or response within an unreasonably short period of time; or meritless assertions of patent infringement.  Courts may also consider actual or threatened lawsuits based upon similar assertions of infringement, the patent owner's investment in the use of the patent, and whether the patent has been successfully enforced through litigation.  Vt. Stat. Ann. tit. 9 § 4197.

In passing the Act, the Vermont legislature "recognize[d] that Vermont is preempted from any law that conflicts with federal patent law," and characterized the statute as "narrowly focused . . . to facilitate the efficient and prompt resolution of patent infringement claims, protect Vermont businesses . . . while at the same time respecting federal law and being careful not to interfere with legitimate patent enforcement actions." *Id.* § 4195.

The notice of removal submits that the BFAPIA "affects the validity of certain laws of the United States, including but not limited to: Title 35 of the United States Code . . . the First, Fifth and Fourteenth Amendments to the U.S. Constitution, the Supremacy Clause, and the Patent Clause of the U.S. Constitution."  ECF No. 1 at 2.  MPHJ also argues that the Act discriminates against certain types of patent owners.  MPHJ's

counterclaims echo the allegation that the BFAPIA violates federal law.  In addition, the counterclaims seek declaratory relief with respect to the alleged infringement and validity of MPHJ's patents, and claim that the VCPA violates federal law.

The State insists that the BFAPIA is not a part of its Amended Complaint, just as it was not a part of the original Complaint.  The State also contends that the validity of MPHJ's patents is not at issue, and that MPHJ's second effort at removal is untimely.  Accordingly, the State has again moved to remand. The State also moves, in the alternative, to dismiss MPHJ's counterclaims on grounds of sovereign immunity, lack of standing, and lack of subject matter jurisdiction.

## II.  MPHJ's Concurrent Lawsuit

In its notice of removal, MPHJ asks the Court to decide its counterclaims either in the course of this case, or in a separate civil action it has filed in this Court against Attorney General William Sorrell and Assistant Attorney General Bridget Asay.  ECF No. 1 at 3.  That action, docketed on September 8, 2014, initially asserted facial and as applied constitutional challenges to the BFAPIA (Count I); brought an as applied challenge to the VCPA (Count II); sought a declaration that MPHJ did not violate the VCPA (Count III);  and alleged a "chilling" of MPHJ's exercise of its First Amendment rights (Count IV). *MPHJ v. Sorrell*, No. 2:14-cv-191 ECF No. 1 at 20-25.  MPHJ's

Amended Complaint, filed on December 29, 2014, drops Assistant
Attorney General Asay as a defendant and brings similar claims.

**III. The State's Motion to Remand**

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought
in a State court of which the district courts of the United
States have original jurisdiction, may be removed by the
defendant or the defendants, to the district court of the United
States for the district and division embracing the place where
such action is pending."  28 U.S.C. § 1441.  Generally, Section
1441 "authorizes the removal of civil actions from state court to
federal court when the action initiated in state court is one
that could have been brought, originally, in a federal district
court."  *Lincoln Property Co. v. Roche*, 546 U.S. 81, 83 (2005);
*see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)
("Only state-court actions that could have been filed in federal
court may be removed to federal court by the defendant.").

"In light of the congressional intent to restrict federal
court jurisdiction, as well as the importance of preserving the
independence of state governments, federal courts construe the
removal statute narrowly, resolving any doubts against
removability."  *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269,
274 (2d Cir. 1994) (quotation omitted).  MPHJ bears the burden of
demonstrating that federal subject matter jurisdiction exists.
*See Cal. Pub. Emps. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100

8

A8

(2d Cir. 2004).

    A.   Timeliness

       i.   Effective Date of the Amended Complaint

The parties first dispute whether MPHJ's second Notice of Removal was timely. The dispute centers upon the State's filing of its Amended Complaint and related motion to amend. On March 7, 2014, prior to the initial remand, the State filed a conditional motion to clarify and/or amend in this Court. In doing so, the State made clear that it did not concede the Court's jurisdiction and asserted that, upon remand, the amendment would take effect as a matter of course under state law. *State v. MPHJ Tech. Inv., LLC*, No. 2:13-cv-170 (ECF No. 45 at 5). The Court remanded the case to state court on April 15, 2014 without ruling on the motion to amend. The State filed its Amended Complaint in state court on May 7, 2014. The state court granted the motion to amend on August 28, 2014. MPHJ filed its notice of removal on September 9, 2014.

Under 28 U.S.C. § 1446(b)(3), "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The State contends that the 30-day removal period began when it filed its amended pleading in May 2014. In the

9

A9

alternative, the State argues that the 30-day period began when
MPHJ became aware of the BFAPIA's enactment into law in July
2013.  MPHJ counters that the clock did not start until the state
court granted the motion to amend in August 2014.

The state court did not explicitly determine whether, under
state law, it was required to consider the Amended Complaint as
filed as a matter of right in May 2014 rather than by motion.
When the issue was raised during a May 22, 2014 hearing, counsel
for MPHJ opined that the State was required to move for leave to
amend.  Judge Toor responded: "I think, because you haven't
answered, they're entitled to amend without permission.  But you
can check the rule on that . . . .  If you think you should move
to strike her amended complaint go ahead, but my initial reaction
is I think they have the right to do that."  ECF No. 3-1 at 37,
38.  As noted above, the state court subsequently granted the
State's motion to amend.

Because the state court record is unclear as to whether
Judge Toor accepted the Amended Complaint as filed as a matter of
right, or instead as valid only upon the granting of the motion
to amend, this Court declines to remand on the basis of the
Amended Complaint's effective date.

ii.  Revival of MPHJ's Right to Remove

The State also contends that amending its pleading did not
afford MPHJ a second opportunity to remove the case because the

Amended Complaint was essentially identical to the original
Complaint.  This raises the question of whether the Amended
Complaint "revived" MPHJ's right to remove after its first
removal was unsuccessful.  As explained by the Fifth Circuit,
"'an amendment of the complaint will not revive the period for
removal if a state court case previously was removable . . . ,'
[although] a different result generally is reached if the
pleading amendment provides (1) a 'new basis for removal' or (2)
'changes the character of the litigation so as to make it
substantially a new suit.'"  *Braud v. Transport Serv. Co. of
Illinois*, 445 F.3d 801, 806 (5th Cir. 2006) (quoting 14C Wright,
Miller & Cooper, Federal Practice and Procedure, § 3732 at
311-48); *see also MG Bldg. Materials, Ltd. v. Paychex, Inc.*, 841
F. Supp. 2d 740, 744 (W.D.N.Y. 2012) ("The gist of this
principle, then, is that . . . the defendant's right to remove
can be 'revived' if the plaintiff amends the complaint, and in so
doing dramatically changes the essential character of the
action.").

   The Amended Complaint in this case is entitled "First
Amended Consumer Protection Complaint," thereby emphasizing that,
as with the initial Complaint, the State is bringing an
enforcement action under the VCPA.  The first sentence of the
Amended Complaint states that "[t]he Vermont Attorney General
brings this suit under the Vermont Consumer Protection Act, 9

V.S.A. §§ 2541 *et seq.* in response to consumer fraud violations by Defendant MPHJ Technology Investments, LLC." ECF No. 5-1 at 1. Again, the State is making an explicit effort to limit its claims to the VCPA.

The sole legal allegations in the Amended Complaint are that MPHJ violated the VCPA by engaging in various types of unfair and deceptive trade practices. *Id.* at 8-9. No other statutory or common law violations are alleged. The request for relief seeks a permanent injunction barring business activity that violates "Vermont law," but read in the context of the State's pleading, does not seek relief under the BFAPIA. Accordingly, the Amended Complaint did not change the character of the litigation in any way, and thus did not revive MPHJ's ability to remove the case.

Even if, as MPHJ contends, the passage of the BFAPIA provided a new opportunity for removal, the second notice of removal was untimely. The BFAPIA was enacted into law prior to this Court's initial remand, and indeed, prior to MPHJ's response to the State's initial motion to remand. Moreover, MPHJ cited the Act in its opposition to the State's first motion to remand. *State v. MPHJ*, No. 2:13-cv-170 (ECF No. 18 at 15 n.12). That citation appeared in a document filed on September 18, 2013 – several months prior to the Court's first remand order and nearly one year before MPHJ's most recent removal. MPHJ thus could have cited the BFAPIA as a ground for removal initially, and/or could

12

A12

have moved to amend to add its counterclaims at that time.

MPHJ submits that the time period for removal can only be started by the receipt of a document, and not by a party's subjective knowledge of a triggering event. Indeed, the 30-day removal deadline set forth in Section 1446(b)(3) requires "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper . . . ." 28 U.S.C. § 1446(b)(3). Courts have held, however, that an exchange of documents in the course of litigation may evidence a party's knowledge of the grounds for removal, and that timeliness can be determined on the basis of such evidence. *See, e.g., Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) (holding that a Court must "rely on the face of the initial pleading and on the documents exchanged in the case by the parties"); *Mirowski Family Ventures, LLC v. Bos. Scientific Corp.*, 2014 WL 2574615 (D. Md. June 5, 2014); *Andrews v. Daughtry*, 994 F. Supp. 2d 728 (M.D.N.C. 2014); *Univ. of Ky. Research Found., Inc. v. Niadyne, Inc.*, 2013 WL 5943921 (E.D. Ky. Nov. 5, 2013). It has also been held that "[t]he motion, order or other paper requirement is broad enough to include any information received by the defendant, whether communicated in a formal or informal manner." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996); *see also* 14C Wright, Miller & Cooper, Federal Practice & Procedure, § 3732 (noting that the "[f]ederal

13

A13

judges are inclined to interpret the statute in keeping with its intended purpose of assuring that a defendant has an opportunity to assert the Congressionally bestowed right to remove upon receiving notice that the right exists in a particular case").

This case is unique in that the fact giving rise to removal was not disclosed by a party through pleadings or discovery, but was instead the public passage of a law. Nonetheless, MPHJ's citation to the BFAPIA in September 2013 revealed its actual knowledge of the statute, and the Court need not engage in any additional inquiry to determine when the time period for removal commenced. Because MPHJ was aware of the statute in 2013, and thus could have "intelligently ascertain[ed]" potential grounds for removal, the Court cannot countenance its effort to remove on the basis of the State's amended pleading nearly one year later. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 198 (2d Cir. 2001).

MPHJ's counterclaims consist of six counts: BFAPIA claims (Counterclaims 1 and 2), patent rights claims (Counterclaims 3 and 4), and VCPA claims (Counterclaims 5 and 6). Counts 1 and 2 are untimely since, as discussed above, they could have been brought in 2013 when MPHJ first became aware of the BFAPIA. The patent rights claims cite conflicts with the BFAPIA, and thus could also have been brought in 2013. As to the VCPA claims, those could clearly have been asserted in response to the initial

Complaint.  If MPHJ wishes to bring challenges to the BFAPIA or other Vermont statutes in federal court it may do so – and has in fact done so – in a separate action.  MPHJ's claims in this case, however, do not provide the basis for an untimely second removal, and this case must again be **remanded** to state court.

B.    Removal Under 28 U.S.C. § 1442(a)(2)

Furthermore, MPHJ's reliance upon the federal officer removal statute, 28 U.S.C. § 1442(a)(2), as a basis for removal is misplaced.  The federal officer removal statute provides that any action brought against a federal officer or agency "for or relating to any act under color of such office" may be removed to federal court by the defendant.  28 U.S.C. § 1442(a)(1); *see also Isaacson v. Dow Chem. Co.*, 517 F.3d 129,135 (2d Cir. 2008).  A defendant that is not itself a federal officer must demonstrate that it is "[a] property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States."  28 U.S.C. § 1442(a)(2).  Section 1442 represents an exception to the general rule that the basis for removal must be set forth in a well-pleaded complaint.  *Mesa v. California*, 489 U.S. 121, 136 (1989).

MPHJ's theory under Section 1442(a)(2) is that title to its patents was derived from a federal officer, and that its defenses and counterclaims affect the validity of federal law.  The State counters that MPHJ's theory is "akin to suggesting a landowner's

title derives from the Governor or the recording clerk." ECF No. 28 at 7. Neither party has cited case law directly on point.

The Second Circuit, in an unpublished opinion, recently referred to Section 1442(a)(2) as a "seldom-invoked federal-title-dispute removal provision." *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 2014 WL 1776011, at *4 (2d Cir. May 6, 2014); *see also Faulk v. Owens Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999) ("[I]t appears that 28 U.S.C. § 1442(a)(2), the federal title dispute statute, is a rarely invoked statute."). Summarizing the history of the statute, the district court in *Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 714 (D. Conn. 1977) stated:

> The apparent purpose of the predecessors of § 1442(a)(2) was to insure a federal forum to persons who took title to property from a revenue officer and faced a challenge to their title from others, such as taxpayers, who claimed that the law under which the revenue officer had seized their property was invalid.

At least one court has determined that "title" implies real property and does not extend to a contractual property right. *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 534 (E.D. La. 2011).

The Court is skeptical of Section 1442(a)(2)'s application to a patent case. MPHJ's position ultimately fails, however, because this action does not call into question the validity of any federal law. MPHJ argues that by compelling its compliance with the BFAPIA, Vermont will be frustrating its patent interests

under various federal statutes pertaining to ownership and assignment of patents (35 U.S.C. § 261), patent infringement (§ 271), and remedies for infringement (§§ 284, 285, 287), as well as portions of the U.S. Constitution.  ECF No. 1 at 3-4.  MPHJ's position assumes, however, that the State's pleadings somehow incorporate the BFAPIA.  ECF 26 at 23-24 (citing only the BFAPIA as "affect[ing] the validity" of federal statutes and the Constitution).  The State argues, and the Court agrees, that the Amended Complaint is brought exclusively under the VCPA, and does not seek relief under any other statute or legal provision.  The Court therefore declines to allow removal under Section 1442(a)(2).

C.    Removal Under 28 U.S.C. § 1443

MPHJ's notice of removal also cites 28 U.S.C. § 1443.  A party removing under Section 1443(1) must allege denial of a right arising under a federal law "providing for specific civil rights stated in terms of racial equality."  *Georgia v. Rachel*, 384 U.S. 780, 792 (1966); *see also Johnson v. Mississippi*, 421 U.S. 213, 219 (1975).  While the State properly notes that this case does not involve such civil rights, MPHJ argues that where a federal law prohibits discrimination based upon race and other types of unequal treatment – such as discrimination against patent owners – that law serves as the basis for removal.  More specifically, MPHJ contends that it has been discriminated

17

A17

against as a certain *type* of patent owner, and that it is
therefore entitled to relief under 42 U.S.C. §§ 1981 (protecting
the right "to make and enforce contracts") and 1982 (protecting
the rights to "lease . . . and convey . . . property").

This argument has been considered and rejected by several
courts.  In one such case, the court concluded that "[i]n the
absence of even a scintilla of an allegation that race
discrimination is at all involved in this case, defendants enjoy
no standing to raise claims under Sec. 1981 in support of their
removal petition."  *Bd. of Ed. of City of Atlanta v. Am. Fed'n of
State, County and Mun. Emp.*, 401 F. Supp. 687, 692 (D. Ga. 1975);
*see also City of Winston Salem v. Chauffeurs, Teamsters & Helpers
Local Union No. 391*, 470 F. Supp. 442, 445-46 (D.N.C. 1979)
(finding the invocation of Section 1981 without evidence of
race-based action "clearly frivolous"); *West Virginia State Bar
v. Bostic*, 351 F. Supp. 1118, 1122 (D. W. Va. 1972)(rejecting
removal under Section 1981 because "[t]here are no racial
overtones in this case").

Furthermore, the Second Circuit and the U.S. Supreme Court
have consistently construed Sections 1981 and 1982 as forbidding
discrimination on the basis of race.  As explained in *United
States v. Nelson*, 277 F.3d 164, 177 (2d Cir. 2002), both Sections
1981 and 1982 were ratified in 1868 and enacted pursuant to the
Thirteenth Amendment.  "Like the Thirteenth Amendment, the text

of § 1981 does not expressly mention the race of the person benefitted by the statute, and, as it has done with the Thirteenth Amendment, the Supreme Court has construed the section to forbid any 'racial' discrimination in the making of private as well as public contracts." *Nelson*, 277 F.3d at 177.  The *Nelson* court similarly concluded that Section 1982 has been "construed . . . to forbid public and private racially discriminatory interference with property rights." *Id.*

Finally, MPHJ's position is once again premised upon the assumption that the Amended Complaint seeks relief under the BFAPIA.  *See* ECF No. 26 at 25 (arguing that "the State's new attempt in its Amended Complaint to enjoin MPHJ to comply with the [BFAPIA] deprives MPHJ of rights afforded to other patent owners in a manner prohibited by law"); ECF No. 1 at 4 (asserting that the BFAPIA qualifies the case for removal under Section 1443).  As discussed previously, the Court finds no such claim or request for relief in the State's pleadings.

D.    Removal Under 28 U.S.C. § 1454

MPHJ's last basis for removal is 28 U.S.C. § 1454.  Section 1454, passed in 2011 as the Leahy-Smith America Invents Act, provides for removal of a civil action "in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." "This provision authorizes removal of cases in which the only

federal question arises in a patent or copyright counterclaim." *Mirowski Family Ventures, LLC v. Boston Scientific Corp.*, 2014 WL 2574615, at *4 (D. Md. June 5, 2014). Section 1454 is thus another exception to the well-pleaded complaint rule. *See Andrews v. Daughtry*, 994 F. Supp. 2d 728, 732 (M.D.N.C. 2014).

Congress enacted Section 1454 after the Supreme Court's decision in *Holmes Group, Inc. v. Vornado Air Circulation Systems*, 535 U.S. 826 (2002), which held that a defendant's compulsory counterclaim under the Copyright Act could not serve as the basis for appellate jurisdiction in the Federal Circuit. *See Andrews*, 994 F. Supp. 2d at 731-32. "The rule articulated in *Holmes Group* meant that state courts could end up adjudicating a significant amount of federal patent claims. In response, Congress passed the so-called 'Holmes Group fix,'" allowing federal courts to assert subject matter jurisdiction on the basis of a counterclaim arising under federal patent or copyright law. *Id.* (citing Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539, 539 (2012)).

The State sets forth three distinct positions in opposition to removal under Section 1454. The State first contends that MPHJ's counterclaims are barred by sovereign immunity. This argument is initially appealing, as a claim against the State in federal court, irrespective of the relief sought, is barred by

the Eleventh Amendment. *See, e.g., Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999). However, MPHJ has named Attorney General William Sorrell as a counterclaim defendant, and while the parties disagree about the propriety of naming the Attorney General, there is no dispute that Sorrell would not enjoy the same broad Eleventh Amendment immunity. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

The State next argues that Section 1454 is inapplicable because MPHJ's counterclaims are not compulsory. In support, the State notes that *Holmes Group* involved a compulsory counterclaim, and argues that Congress enacted Section 1454 to address that limited situation. MPHJ responds that Section 1454 is not limited to compulsory counterclaims, and that even assuming such a requirement, its counterclaims here are compulsory.

As one district court recently commented, "[Section] 1454 is a new statute, and . . . courts are still wrangling with its meaning." *Donahue v. Tokyo Electron America, Inc.*, 2014 WL 4259386, at *8 (W.D. Tex. Aug. 27, 2014). In this case, the Court declines to parse the novel issues presented by the parties since, as noted above, MPHJ's second notice of removal was untimely. That said, Section 1454 adds an extra consideration with respect to timeliness: allowance for a showing of "cause" to

justify the delay.  28 U.S.C. § 1454(b)(2) (permitting a court to extend the removal deadlines under Section 1446 "at any time for cause shown").  The Court therefore turns to the question of cause for the untimely filing.

"While there is no authority on what constitutes 'cause shown' under 28 U.S.C. § 1454(b)(2) to extend the 30-day time period to remove, at a minimum the standard imposes some burden on the removing party to justify why its tardiness should be excused." *SnoWizard, Inc. v. Andrews*, 2013 WL 3728410, at *6 (E.D. La. July 12, 2013).  Here, MPHJ submits that good cause exists because the BFAPIA had not yet been passed when the original Complaint was filed, and thus could not have been a part of that pleading.  This argument ignores the fact that MPHJ is relying upon the State's request for relief under "Vermont law." That phrase was a part of both the initial and Amended Complaints.  Consequently, and to the extent the phrase "Vermont law" in the State's pleadings encompasses the BFAPIA (a contention that both the State and this Court reject), MPHJ could have applied its current arguments for removal to the initial Complaint.  MPHJ has therefore failed to show cause for its untimely removal, and this case is **remanded** to state court.

## IV.  Conclusion

For the reasons set forth above, the State's motion to remand (ECF No. 22) is **granted** and its motion to dismiss (ECF No.

25) is **denied** as moot.  This case is **remanded** to state court.

Dated at Burlington, this 9th day of January, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

# United States Court of Appeals
## for the Federal Circuit

*State of Vermont v. MPHJ Technology Investments,* 2014-1481

### PROOF OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by FARNEY DANIELS PC, Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **April 6, 2015** counsel has authorized me to electronically file the foregoing **Brief For Appellant MPHJ Technology Investments, LLC** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Bridget C. Asay
Ryan Kriger
Naomi Sheffield
Benjamin D. Battles
Assistant Attorney Generals
Vermont Office of the Attorney General
109 State Street, 3rd Floor
Montpelier, VT 05609-1001
(802) 828-3181
Bridget.asay@state.vt.us
Naomi.sheffield@state.vt.us
Ryan.kriger@state.vt.us
Benjamin.Battles@state.vt.us
*Attorneys for State of Vermont*

Paper copies will also be mailed, via Express Mail, to the above counsel at the time

paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

April 6, 2015                          /s/ Elissa Matias
                                          Elissa Matias
                                          Counsel Press

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 13,910 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).  This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

Dated: April 6, 2015

/s/ *W. Bryan Farney*
W. Bryan Farney
*Counsel for Appellant*